**Cleburn Lee MARSHALL, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 269–69.**

United States Court of Appeals, Tenth Circuit.

March 23, 1970.

James G. Beasley, Wichita, Kan., for appellant.

Bernard V. Borst, Asst. U. S. Atty, (Robert J. Roth, U. S. Atty., was with him on the brief) for appellee.

Before LEWIS, HILL and HOLLO-WAY, Circuit Judges.

LEWIS, Circuit Judge.

Appellant Marshall has challenged his conviction of a Dyer Act offense, 18 U. S.C. § 2312, after trial by jury in the United States District Court for the District of Kansas and sentence imposed under the Federal Youth Corrections Act. 18 U.S.C. § 5010(b). After refinement of the parties' contentions we consider the appellate questions to be:

Did the court err in conducting an adversary hearing in probing the grounds claimed by appellant for investigative aid made by motion pursuant to the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(e)?

Did the court err in designating the Federal Bureau of Investigation as the instrument to furnish such aid?

Did the court err in refusing to order a psychiatric hearing on appellant's mental competency at time of sentence, such a hearing being claimed as proper under 18 U.S.C. § 4245?

Since we answer each of the first two questions in the affirmative we need not consider the third contention.

Appellant's indictment charged the unlawful interstate transportation of a stolen motor vehicle from Washington, D.C., to Pittsburg, Kansas. At his arraignment on January 8, 1969, Marshall sought and was granted appointment of counsel. On January 27, 1969, one week before trial commenced, Marshall's court-appointed counsel filed the following motion with the court:

> COMES NOW the defendant, Cleburn Lee Marshall, by and through his court appointed attorney, James G. Beasley, and moves the court for an order appointing or arranging for counsel in Washington, District of Columbia, to aid in the preparation of the defense of the above-named defendant; that due to the distance from Washington, D.C., defendant's attorney is unable to contact witnesses material to defendant's case and that defendant is thereby prejudiced by his indigence in adequately preparing his defense.

The motion was not accompanied by a supporting affidavit further designating the assistance sought. On January 30, defense counsel presented the motion in open court; it was called for hearing with the Assistant United States Attorney present and designated by the clerk

as a motion for the appointment of counsel. At the outset of the hearing, counsel advised the court that the purpose of the motion was "to obtain certain witnesses." He explained:

I have asked in my motion that this Court appoint counsel, or to arrange for some investigation pursuant to the Criminal Justice Act to investigate in Washington, D.C. at a particular location, that we were supplied, an individual there who, in fact, gave [possession of] the car that the defendant has been charged with transporting.

\* \* \* \* \* \*

So, my motion is to ask the Court to have either another attorney in the District of Columbia appointed by the federal court there to investigate, or in the alternative to instruct the government, or to in some way incorporate the help of this court to try to locate this individual and to subpoena him before this court to testify on behalf of the defendant.

To that point counsel had summarized his information describing one "Joe," the primary witness sought, and the whereabouts of a female bartender who reportedly could identify this "Joe." Because the proffer was sketchy and the hearing predated jury trial by only several days, the government then requested that Marshall testify under oath on the substance of the motion in order to lay a basis for the services sought. The court advised Marshall that he would be subject to cross-examination and penalties for perjury; and counsel was directed to consult with his client on whether Marshall "want[ed] to run the risk or not." Marshall then took the stand and, in effect, detailed his defense. He testified, under oath, that he had obtained permissive possession of the subject car from a person named "Joe" and

presumably the owner of the car; that he had met "Joe," an Oriental, in a specifically designated bar in Washington, D.C.; that a woman named "Lulu," a bartender at the Washington tavern, knew "Joe."

The government extensively cross-examined Marshall concerning his relationship with "Joe" and, over objection, concerning appellant's conduct and events occurring after appellant obtained the car and began his interstate trip which resulted in his arrest. At the conclusion of the hearing the court ordered government counsel to request the F.B.I. to make an investigation of "Joe" and "Lulu" and forward a report to the court. The F.B.I. subsequently made such a report.

Marshall testified in his own defense at the trial and related the same general version of events that he had testified to at the hearing. A transcript of his earlier testimony on the motion, designated by the court as "a motion of the defendant for assistance in producing witnesses," was introduced in evidence for the purpose of impeaching Marshall's credibility on direct, was extensively referred to on that issue, and finally given to the jury for consideration during their deliberations.

Marshall's initial claim involves the interplay of language in two subsections of the Criminal Justice Act of 1964, 18 U.S.C. § 3006A(b), (e). Appointment of counsel for federally prosecuted indigents is provided for in 18 U.S.C. § 3006A(b), which contemplates "appropriate inquiry" by the court as to defendant's claimed need. However, subsection (e), covering services other than counsel, requires an ex parte proceeding to test the necessity of "investigative, expert, or other services" to the conduct of the accused's defense.[1] *See*

---

1. The statute reads in pertinent part:
   Counsel for a defendant who is financially unable to obtain investigative, expert, or other services necessary to an adequate defense in his case *may request them in an ex parte application.* Upon finding, after appropriate inquiry *in an*

*ex parte proceeding,* that the services are necessary and that the defendant is financially unable to obtain them, *the court shall authorize counsel to obtain the services on behalf of the defendant.* (emphasis added).

Christian v. United States, 10 Cir., 398 F.2d 517, 519. If the ex parte hearing reveals that the services are "necessary" and the applicant in financial need, the court is directed to "authorize [defense] counsel to obtain the services on behalf of the defendant." Because appellant in his original motion made mention of "appointing or arranging for counsel in Washington" the United States urges that the motion was properly considered in open court under subsection (b). We do not agree. Although the written motion was ambiguous, counsel explained before testimony was taken at the hearing that the motion sought investigative aid, whether by Washington, D.C. counsel or any other means, and later at trial the court referred to the motion as one for the production of witnesses. Accordingly, it can only be fairly characterized as coming under subsection (e).

■ The use of a closed hearing rather than an ex parte proceeding to explore the need for services sought under section 3006A(e) subverts the Act's objective to implement the caliber of criminal justice by providing access to these services. *See generally* Christian v. United States, *supra,* at 518–519 & nn.2–3; Ray v. United States, 8 Cir., 367 F.2d 258, 264 & n.7, cert. denied, 386 U.S. 913, 87 S.Ct. 863, 17 L.Ed.2d 785. Certainly the movant cannot be said to "waive" disclosure of his case and his concomitant rights against self-incrimination and to due process by proceeding under subsection (e). The manifest purpose of requiring that the inquiry be ex parte is to insure that the defendant will not have to make a premature disclosure of his case. 2 U.S. Code Cong. & Ad.News, p. 2990 (1964); *see* Kutak, "Criminal Justice Act of 1964," 44 Neb.L.Rev. 703, 737 (1966). Even though the rights established by section 3006A(e) are clearly procedural, *see* Ray v. United States, *supra,* at 266

& n.12; Watson v. Patterson, 10 Cir., 358 F.2d 297, 298, cert. denied, 385 U.S. 876, 87 S.Ct. 153, 17 L.Ed.2d 103, and appellant could have waived the services provided therein by not timely moving under subsection (e), *see* 367 F.2d at 266–267, we cannot countenance use of any other than an ex parte[2] determination if a motion does, in fact, come under that statute. In most instances the hearing should be held in the absence of the prosecution.

■ Because the procedural difficulties that developed during the course of the hearing on appellant's motion did, indeed, spring from lack of specificity in counsel's written motion, the government contends that appellant waived such rights as are inherent under section 3006A(e) and repeated the waiver by not affirmatively objecting to the participation of the government in the proceeding. We think the record negatives any voluntary waiver of such rights. After appellant's counsel had orally explained to the court the general nature of the relief sought by his motion and had indicated with some exactitude the reasons that he desired "Joe" and "Lulu" to be located as potential witnesses for the defense, government counsel stated to the court:

Now, quite frankly, I am not prepared to concede that this Court should, on the basis of a statement of counsel, make any finding or any order on this motion. If the defendant wishes to provide sworn testimony in the nature which has been outlined here, then, and only then, do I think the Court would be in a position to rule. But, I would like to advise the Court that the information available to the government is that this is probably the fourth or maybe the fifth different story that this defendant has told in regard to his acquisition of the automobile in question. And, on

---

2. An ex parte determination has been characterized as
    proceedings had at the instance or for the benefit of one side, or of one party, only, without notice to or contest by any person adversely affected, or in the absence of opposing parties * * *. In re Will of Bowlus, 197 Kan. 351, 416 P.2d 711, 716.

the basis of that information which I have, I don't think that this Court, on the statement of counsel here today, should make any kind of order at all.

■ We agree that the trial court in probing the need for investigative aid may properly require that such need be established by sworn testimony presented ex parte. But here the government insisted upon an alleged right of cross-examination and was allowed to do so almost without qualification and as a condition precedent to the court's consideration of the merits of appellant's motion. Such circumstance cannot support a claim of waiver and, since the transcript was used extensively as a tool of impeachment at trial, we need not pause to consider the government's claim that no actual prejudice resulted to appellant. As we have earlier stated in Rice v. United States, 10 Cir., 149 F.2d 601, 604: "[W]here it appears that within the range of reasonable possibility the error may have affected the verdict, the appellant is not required to show that it in fact did so. * * *" *See* Bacino v. United States, 10 Cir., 316 F.2d 11, 14, cert. denied, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62.

■ Although the appellant made no affirmative objection to the court's designation of the Federal Bureau of Investigation as the instrument to render investigative service to appellant, it seems apparent that only the most unusual circumstances could relieve such a designation from the taint of plain error. Just as an indigent defendant has a right to appointed counsel to serve him as a loyal advocate he has a similar right under properly proven circumstances to investigative aid that will serve him unfettered by an inescapable conflict of interest. The Bureau, following leads furnished by an accused, is obviously faced with both a duty to the accused and a duty to the public interest. The dilemma, and danger, is glaringly apparent in the events that occurred in the case at bar.

■■ Acting at the request of the trial court, the F.B.I. did locate "Lulu"

whose true name was Lois, and the witness was subpoenaed. She testified, however, not for appellant but as a rebuttal witness for the United States and her testimony bolstered the prosecution. Prior to appellant's testimony at the hearing, the United States was apparently unaware of the witness' existence. Certain it is that section 3006A(e) can neither be used directly in an adversary proceeding, nor indirectly through appointment of a government agency, as a means of frustrating the fifth amendment right prohibiting self-incrimination.

The judgment is reversed.