**UNITED STATES of America**
**Plaintiff-Appellee,**

v.

**John Andrew GRESCHNER, Ronnie Joe Criswell, Defendants-Appellants.**

**Nos. 84–2032, 84–2033.**

United States Court of Appeals,
Tenth Circuit.

Sept. 25, 1986.

374

Ira R. Kirkendoll, Asst. Federal Public Defender, Kansas City, Kan. (Charles D. Anderson, Federal Public Defender, Wichita, Kan., was on the brief), for defendants-appellants.

John Andrew Greschner and Ronnie Joe Criswell, pro se.

Alleen S. Castellani, Asst. U.S. Atty., Topeka, Kan. (Benjamin L. Burgess, Jr., U.S. Atty., Wichita, Kan., was also on the brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, SEYMOUR, Circuit Judge, and WEST, District Judge *.

* The Honorable Lee R. West, United States District Judge for the Western District of Oklahoma, sitting by designation.

HOLLOWAY, Chief Judge.

The defendants-appellants John Greschner and Ronnie Criswell timely appeal their convictions and sentences for first degree murder and conspiracy to commit murder.[1] The cases arose out of a homicide committed at the federal penitentiary in Leavenworth, Kansas.

Government witnesses testified that on October 6, 1983 at a prison stairwell Criswell struck inmate Andreason with a pipe and then both defendants stabbed Andreason with homemade knives, repeatedly inflicting numerous wounds to Andreason's back. The wounds resulted in his death by exsanguination. Some Government witnesses saw only Greschner doing the stabbing of Andreason.

The defendants' version of the incident, through several inmates' and Greschner's own testimony, established a case of self-defense. The witnesses testified that Andreason planned to take over a gambling operation of defendants; Andreason secured a knife and sought help to make his move against defendants; Greschner got word of the threat and also armed himself; an unidentified inmate lunged at Criswell with a knife and Criswell struck this assailant with a pipe; Andreason lunged at Greschner with a knife and Greschner was cut, and Criswell then hit Andreason with a pipe and got Andreason's knife. None of these witnesses saw Criswell stab Andreason. Greschner and Criswell both surrendered the knives they then had. Brief for Appellants at 4–5.

Defendants represented themselves at trial but also had the assistance of two court appointed attorneys. The jury trial resulted in verdicts of guilty as to both defendants, after about two days of deliberation. On appeal, the defendants do not challenge the sufficiency of the evidence to support their convictions, but they do strenuously argue, among other things, that the trial court committed reversible error in the following respects: (1) by failing to admonish the witnesses not to discuss their testimony during the course of the trial after a motion for sequestration of witnesses; (2) by refusing to appoint a penologist at the Government's expense to assist in the defendants' preparation for trial and to testify on their behalf; (3) by refusing to subpoena certain lay witnesses at the Government's expense; (4) by refusing to declare a mistrial, sequester the jury, or conduct additional voir dire of the jury after an allegedly prejudicial newspaper article was published during the fourth day of trial; (5) by improperly allowing a Government attorney to question defense witnesses Marone and Crenshaw about convictions over ten years old; and (6) by erroneously limiting Criswell's questioning of Charles Gary, who was testifying for the defense, about his state of mind during a prison free-for-all.

I

■ Prior to trial the defendants requested that the court sequester prospective witnesses pursuant to Fed.R.Evid. 615. I R. 56. This Rule provides in pertinent part: "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion." Fed.R.Evid. 615. The trial court granted the request. II R. 167. After the second prosecution witness concluded his testimony, the defense suggested that he "be sequestered away from the other witnesses until such time as they have testified." VII R. 265. The court denied this request, noting that it had "never adopted that rule of sequestering witnesses after they have testified." VII R. 265. On appeal the defendants argue that Rule 615 requires not only that prospective witnesses be excluded from the courtroom, but also that they be prohibited from discussing the case with other witnesses. We agree.

---

**1.** Both Greschner and Criswell were each given two life sentences, one on the murder conviction and one on the conspiracy conviction, to run consecutively to the prison terms they are already serving. III R. 436, 437.

■ The trial judge was in error in his view that the Rule does not include this protection. Our decisions have made clear that "a circumvention of the rule does occur where witnesses indirectly defeat its purpose by discussing testimony they have given and events in the courtroom with other witnesses who are to testify." *United States v. Johnston*, 578 F.2d 1352, 1355 (10th Cir.), *cert. denied*, 439 U.S. 931, 99 S.Ct. 321, 58 L.Ed.2d 325 (1978). Denial of such protection of the Rule creates a clear risk of reversal. *See United States v. Buchanan*, 787 F.2d 477, 484–85 (10th Cir. 1986); *United States v. Prichard*, 781 F.2d 179, 183 (10th Cir.1986). *United States v. Johnston*, 578 F.2d at 1355. After review of this record we conclude, however, that the error was harmless under 28 U.S.C. § 2111 and Fed.R.Crim.P. 52(a), and not one requiring reversal.[2] In this circuit, the defendant must make a showing of probable prejudice or an abuse of discretion as a predicate to reversal based on a trial court's disregard of Rule 615. *See United States v. Buchanan*, 787 F.2d at 485; *United States v. Prichard*, 781 F.2d at 183 (10th Cir.1986); *see also United States v. Johnston*, 578 F.2d at 1355–56. Here no such showing was made, for the defendants have done nothing more than speculate about the possibility of conversations between the witnesses. *See United States v. Prichard*, 781 F.2d at 183 & n. 2; *United States v. Johnston*, 578 F.2d at 1356. Such conjecture does not provide this court with any meaningful guidance in assessing the potential for actual prejudice to the defendants or of an abuse of discretion, and we will not reverse since no such showing was made.

## II

■ The defendants argue that the trial court erred in denying their motion to appoint a penologist at the Government's expense. Prior to trial, the defendants asked the court to appoint Bill Scott as a penologist, arguing that such assistance was guaranteed by the Criminal Justice Act. I R. 121. That statute provides as follows:

> Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are necessary and that the person is financially unable to obtain them, the court ... shall authorize counsel to obtain the services.

18 U.S.C. § 3006A(e)(1) (1982). The trial court conducted a hearing on the motion. At this hearing, defendant Greschner argued that Scott had obtained expertise on prison environments by virtue of his experience as an inmate and prison administrator. Greschner also contended that Scott's testimony was necessary for the jury to fully understand the danger of living in a federal penitentiary. V R. 7–10. The trial court denied the motion. On appeal, the defendants contend that the ruling was erroneous under § 3006A(e) and that it violated their Fifth Amendment right to due process.

■ We reject both contentions. The court need not appoint an expert unless it is convinced that such services are necessary to an adequate defense. *Christian v. United States*, 398 F.2d 517, 519 (10th Cir. 1968). Furthermore, it is the defendant's burden to make a showing of necessity. *See United States v. Mundt*, 508 F.2d 904, 908 (10th Cir.1974), *cert. denied*, 421 U.S. 949, 95 S.Ct. 1682, 44 L.Ed.2d 103 (1975).

The district court found four shortcomings in the defendants' proffer. First, the court rejected Scott's qualifications as an expert. V R. 10. Second, the court reasoned that the same testimony could be given by other witnesses. II R. 153; V R. 10. Third, the court believed that the evidence would have little probative value because Scott did not know the particular circumstances surrounding the defendants' confinement. II R. 153; V R. 10. Finally, the court stated that the defendants had

---

2. Defendants argue for a presumption of prejudice and reversal citing, *inter alia, United States*

*v. Ell,* 718 F.2d 291 (9th Cir.1983).

failed to provide sufficient information regarding Scott's location. II R. 153. We find no error in the rulings under § 3006A(e)(1).[3] *See United States v. Deutsch*, 599 F.2d 46, 49 & n. 5 (5th Cir.) (applying "clear error" standard in reviewing trial court's findings of fact under § 3006A), *cert. denied*, 444 U.S. 935, 100 S.Ct. 283, 62 L.Ed.2d 194 (1979).

Further, the defendants contend that the ruling violated their Fifth Amendment right to due process. The Supreme Court has long held that indigents are entitled to the "basic tools of an adequate defense." *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971); *see, e.g., Griffin v. Illinois*, 351 U.S. 12, 19, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956) (Equal Protection Clause requires state to provide indigent with free trial transcript on first appeal as of right). Recently, the Court extended this principle to the use of psychiatric experts. *See Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 1097, 84 L.Ed.2d 53 (1985).

■ Without deciding whether the constitutional guarantees apply with respect to the services of an expert witness such as Scott, we feel that the defendants here have not made an adequate showing of need for the penologist as a predicate for their constitutional claim. *See Coleman v. Brown*, 802 F.2d 1227 (10th Cir.1986). According to the defendants, Scott would have testified that prison inmates cannot safely seek assistance from outside "establishment" figures. Even conceding that this evidence would have been admissible, we do not think the defendants were deprived of any substantial benefit. *See Caldwell v. Mississippi*, 472 U.S. 320, ——— n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985); *see also* Westen, *Compulsory Pro-*

*cess II*, 74 Mich.L.Rev. 191, 264 (1975) ("neither [the indigent defendant] nor any other defendant has a constitutional interest in producing witnesses whose testimony could not reasonably affect the judgment of the jury"). The record shows that the defendants elicited the same evidence from a number of inmate-witnesses. *See* VII R. 585, 594–95 (testimony of Bryan); VIII R. 630, 634, 643–44 (testimony of Crenshaw), 670 (testimony of Lopez), 695a–96 (testimony of Kell), 730 (testimony of Mills), 915 (testimony of Lanford), 946 (testimony of Dolph), 1051, 1085 (testimony of Greschner). Unlike Mr. Scott, these inmates lived in Leavenworth and had personal knowledge of the dangers facing Greschner and Criswell.

We find no statutory or constitutional error in the denial of Scott's assistance.

### III

The defendants also contend that the trial court erred in denying their motion to subpoena certain lay witnesses at the Government's expense. Prior to trial, the court granted eleven of the defendants' nineteen requests. I R. 66; II R. 149; *see* II R. 293, 297, 299, 301, 303, 304, 307, 309, 311, 314, 336. Among those the court declined to subpoena were three federal prisoners: Jay Rux, Keith Parkinson and Timothy Crawford. *See* II R. 149, 337. The defendants contend that the refusal to subpoena these three witnesses violated Fed.R. Crim.P. 17(b), the Fifth Amendment due process guarantee and its equal protection component, and the Sixth Amendment compulsory process guarantee.

Rule 17(b) provides as follows:

The court shall order at any time that a subpoena be issued for service on a named witness upon an *ex parte* applica-

---

**3.** The defendants rely heavily on *United States v. Schultz*, 431 F.2d 907, 911 (8th Cir.1970). In *Schultz*, the Eighth Circuit held that requests for expert assistance "must be evaluated on a standard of reasonableness." *Id.* at 911. Since *Schultz* was decided, four other circuits have adopted some version of the reasonableness test. *See United States v. Bass*, 477 F.2d 723, 725 (9th Cir.1973) (expert assistance must be provided under § 3006A(e) "when the defense attorney

makes a timely request in circumstances in which a reasonable attorney would engage such services for a client having the independent financial means to pay for them"); *United States v. Alden*, 767 F.2d 314, 318 (7th Cir.1984) (same); *United States v. Durant*, 545 F.2d 823, 827 (2d Cir.1976) (test under § 3006A(e) is whether expert services are "reasonably necessary"); *see also United States v. Chavis*, 476 F.2d 1137, 1143 (D.C.Cir.1973).

tion of a defendant upon a satisfactory showing that the defendant is financially unable to pay the fees of the witness and that the presence of the witness is necessary to an adequate defense. If the court orders the subpoena to be issued the costs incurred by the process and the fees of the witness so subpoenaed shall be paid in the same manner in which similar costs and fees are paid in case of a witness subpoenaed in behalf of the government.

Fed.R.Crim.P. 17(b).

■ We note that some appellate decisions lend support to defendants' position. Four circuits, for example, restrict the trial court's discretion in applying the rule to avoid any constitutional difficulties. *See, e.g., United States v. Hegwood,* 562 F.2d 946, 952–53 (5th Cir.1977), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978). An indigent in one of these circuits is entitled to a subpoena under Rule 17(b) if he "avers facts which, if true, would be relevant to any issue in the case ... unless the averments are incredible on their face, or unless the Government shows ... that the averments are untrue or that the request is otherwise frivolous." *United States v. Sims,* 637 F.2d 625, 627 (9th Cir. 1980); *United States v. Barker,* 553 F.2d 1013, 1020 (6th Cir.1977); *Welsh v. United States,* 404 F.2d 414, 417 (5th Cir.1968); *Greenwell v. United States,* 317 F.2d 108, 110 (D.C.Cir.1963).

■ Despite such statements in other opinions, we consider the circumstances and the correctness of the rulings on subpoenas under the abuse of discretion standard. *See, e.g., United States v. Stoker,* 522 F.2d 576, 578–79 (10th Cir.1975); *Speers v. United States,* 387 F.2d 698, 702 (10th Cir.1967), *cert. denied,* 391 U.S. 956, 88 S.Ct. 1864, 20 L.Ed.2d 871 (1968); *see also United States v. Linn,* 460 F.2d 1274, 1276–77 (10th Cir.1972); *United States v. Lepiscopo,* 458 F.2d 977, 978 (10th Cir.

1972) (per curiam). In our view, the Fifth and Sixth Amendments require that the trial court give due consideration to the constitutional rights involved.[4] *See United States v. Bennett,* 539 F.2d 45, 53 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976); *United States v. Julian,* 469 F.2d 371, 375 (10th Cir.1972); *Murdock v. United States,* 283 F.2d 585, 587 (10th Cir.1960), *cert. denied,* 366 U.S. 953, 81 S.Ct. 1910, 6 L.Ed.2d 1246 (1961); *see also United States v. Price,* 444 F.2d 248, 250 (10th Cir.1971). We do not think the defendants showed any abuse of discretion or violation of rights under the Rule or the constitutional guarantees here. In denying the requests, the trial court expressed concern over the cost of transporting the witnesses to the trial and the potential burden that would fall on the prisons' administration. VI R. 19; *see United States v. Fountain,* 768 F.2d 790, 797 (7th Cir.), *amended on other grounds,* 777 F.2d 345, 346 (1985); *United States v. Rigdon,* 459 F.2d 379, 380 (6th Cir.1972) (per curiam), *cert. denied,* 410 U.S. 948, 93 S.Ct. 1377, 35 L.Ed.2d 615 (1973); *see also United States v. Hegwood,* 562 F.2d 946, 953 (5th Cir.1977) (witness' location in another state justifies denial of Rule 17(b) motion), *cert. denied,* 434 U.S. 1079, 98 S.Ct. 1274, 55 L.Ed.2d 787 (1978). Despite this concern, however, the trial court did evaluate the requested testimony and concluded that it would be cumulative. II R. 149; *see United States v. Gallagher,* 620 F.2d 797, 800 (10th Cir.), *cert. denied,* 449 U.S. 878, 101 S.Ct. 224, 66 L.Ed.2d 100 (1980); *United States v. Plemons,* 455 F.2d 243, 246 (10th Cir.1972); *United States v. Price,* 444 F.2d 248, 250 (10th Cir.1971). We find no error in the ruling.

According to the defendants, the three men would have testified to the following: (1) Andreason gambled with Greschner and Criswell, V R. 74 (proffer on Keith Parkinson); II R. 318 (same); V R. 80–81 (proffer on Timothy Crawford); (2) Andreason owed

---

**4.** Congress intended the rule to serve as a means of implementing the Sixth Amendment right to compulsory process. *Bandy v. United States,* 296 F.2d 882, 887–88 (8th Cir.1961), *cert. denied,* 369 U.S. 831, 82 S.Ct. 849, 7 L.Ed.2d 796 (1962); 2 C. Wright, *Federal Practice and Procedure* § 271, at 134 (1982).

the defendants a large sum as a result of these games, V R. 75–76 (proffer on Jay Rux), 80–81 (proffer on Timothy Crawford); (3) Andreason and Criswell had an altercation prior to October 6th as a result of this debt, V R. 81 (proffer on Timothy Crawford); II R. 317 (same); V R. 74 (proffer on Keith Parkinson); II R. 318 (same); and (4) Andreason owned a knife, V R. 75 (proffer on Jay Rux); VI R. 6 (same); II R. 317 (same).

Despite the defendants' inability to call these men, they were able to present abundant evidence on three of these matters from other sources. The testimony about Andreason's gambling debt to the defendants, for example, appears throughout the record. Three defense witnesses gave estimates. *See* VII R. 572 (testimony of Bryan; Andreason owed the defendants between $2400 and $2600); VIII R. 728 (testimony of Mills; Andreason owed the defendants $3000), 747 (same), 1033–34 (testimony of Greschner; Andreason owed him more than $900); *see also* VI R. 659 (testimony of Lopez; Andreason said he was "deep in debt" to the defendants). Similarly, several defense witnesses testified that Andreason owned a knife, which he kept in his cell. *See* VII R. 576, 577, 595 (testimony of Bryan); VIII R. 622–24 (testimony of Crenshaw), 683–88 (testimony of Kell).

The remaining item, a prior altercation between Andreason and Criswell, remains something of a mystery. While no one testified about this incident, two witnesses did speak of a similar altercation between Andreason and Greschner. VIII R. 611–12, 615 (testimony of Crenshaw), 1035 (testimony of Greschner). In addition, a number of witnesses testified that Andreason had previously threatened the defendants' lives. VII R. 575, 583, 585 (testimony of Bryan); VIII R. 618–19, 626 (testimony of Crenshaw), 650–54 (testimony of Lopez), 728, 745, 751–52 (testimony of Mills), 1035–36 (testimony of Greschner), 1103–04 (testimony of Mills).

We think that additional evidence of an altercation between Criswell and Andreason would have added little, if anything, to the defendants' theory of self-defense. In any event, the trial court's conclusion that this evidence was unnecessary does not constitute an abuse of discretion or a violation of defendants' rights.

## IV

■ On our own motion we have noted an error of the trial judge in the violation of Fed.R.Crim.P. 17(b) and 18 U.S.C. § 3006A(e)(1) by conducting the hearing on defendant's motions for a penologist and subpoenas for 19 witnesses with Government counsel present. At this hearing, the judge also considered defense motions for the appointment of a pathologist and blood-tests.

The defendants' motion invoked 18 U.S.C. § 3006A(e) and Fed.R.Crim.P. 17(b). These provisions require the trial court to consider the motions *ex parte*. *See Marshall v. United States*, 423 F.2d 1315, 1318 (10th Cir.1970) (Government attorney's participation at hearing violates § 3006A(e)'s *ex parte* requirement); *accord United States v. Lawson*, 653 F.2d 299, 304 (7th Cir.1981) (dictum) (same) *cert. denied*, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982); *Mason v. State of Arizona*, 504 F.2d 1345, 1352 (9th Cir.1974) (dictum) (Government attorney's presence at hearing violates § 3006A(e)), *cert. denied*, 420 U.S. 936, 95 S.Ct. 1145, 43 L.Ed.2d 412 (1975); *United States v. Chavis*, 476 F.2d 1137, 1145 (D.C.Cir.1973) (same); *United States v. Sutton*, 464 F.2d 552, 553 (5th Cir.1972) (per curiam) (same); *Holden v. United States*, 393 F.2d 276, 278 (1st Cir. 1968) (Government attorney's presence at hearing violates Rule 17(b)); *cf. United States v. Brown*, 535 F.2d 424, 428–29 (8th Cir.1976) (Rule 17(b) violated by local rule requiring defendant to send copies of subpoena applications to Government).

The trial court violated the statute and the Rule by allowing two Government attorneys to attend the hearing. V R. 2; VI R. 2. In connection with the request for a penologist, the court instructed the defendants to present "some need material." V R. 6. In responding to this requirement

the defendants disclosed their theory of self-defense. V R. 6–10. The manifest purpose of the ex parte proceedings provided for in the statute and the Rule is to insure that defendants will not have to make a premature disclosure of their case. *Marshall v. United States*, 423 F.2d at 1318; *see also* H.R.Rep. No. 864, 88th Cong., 2d Sess. (1963) (Criminal Justice Act's *ex parte* procedure *"prevents the possibility that an open hearing may cause a defendant to reveal his defense"*), *reprinted in* 2 U.S.Code Cong. & Ad.News 2990, 2990 (1964) (emphasis added); S.Rep. No. 346, 88th Cong., 1st Sess. 3 (1963) (*ex parte* requirement inserted into Criminal Justice Act *"in order to protect the accused from premature disclosure of his case"*) (emphasis added).

■ The question arises whether the *ex parte* procedure can be waived by the defense. In *Marshall* we held that the defendant's failure to object to the Government attorney's participation did not constitute a waiver. 423 F.2d at 1318–19. We did so because of the Government attorney's insistence on an alleged right of cross-examination at the hearing and the allowance of cross-examination. *Id.; cf. Thor v. United States*, 574 F.2d 215, 221 (5th Cir.1978). Since the defendants represented themselves below, we must consider the possibility of waiver with caution. *See United States v. Hamlet*, 456 F.2d 1284 (5th Cir.1972). Nevertheless, we conclude that there is a waiver here. The defendants voluntarily sent a copy of their motion under 18 U.S.C. § 3006A(e), which identified Scott as the requested expert, to the Government attorneys. I R. 121–22. At the hearing on the motion the defendants, who were accompanied by standby counsel (V R. 2; VI R. 2), did not object to the presence of Government counsel. The trial record does not show any raising of this issue below, and it has not been asserted by defendants or their appointed counsel on

appeal. *See United States v. Blasco*, 702 F.2d 1315, 1332 n. 28 (11th Cir.1983). In light of all these circumstances, we conclude that the issue has been waived and that this is not a case of plain error in which we should reverse on our own motion.

V

■ The defendants also advance several arguments concerning a newspaper article that appeared during the fourth day of trial. The article focused on the unusually heavy security that accompanied the trial, noting that the defendants and many of their witnesses had criminal records and allegedly were members of a white supremacist organization called "The White Aryan Brotherhood." IV R. 542 (Defendant's Exhibit H–1). After the defense rested some five days later, the defendants informed the trial judge of the article and moved for a mistrial. The trial court denied this motion and defendant Greschner asked the court for permission to voir dire the jury. This request was also denied. On appeal, the defendants argue that the court erred in denying these motions and in refusing to sequester the jury during the course of the trial.[5] We reject each contention.

We conclude that the defendants failed to show any error in the rulings. The article was factual in nature, concentrating on the security measures taken by the court rather than the actual issues involved in the case. *See United States v. Tokoph*, 514 F.2d 597, 606–07 (10th Cir.1975). We think the brief references to the defendants' criminal records and the "White Aryan Brotherhood" created little danger of prejudice.

Moreover, these matters had already been admitted in evidence. *See Swallow v. United States*, 307 F.2d 81, 85 & n. 14 (10th Cir.1962), *cert. denied*, 371 U.S. 950, 83 S.Ct. 504, 9 L.Ed.2d 499 (1963).[6] The

---

5. Prior to trial, the defendants moved to have the jury sequestered. I R. 123. The court denied the motion, stating that it was unaware of any significant pretrial publicity about the case. II R. 155.

6. This circumstance distinguishes *Mares v. United States*, 383 F.2d 805 (10th Cir.1967). In *Mares* the article in question discussed the defendant's withdrawal of an earlier confession and guilty plea, and the trial court's "reluctant"

Government was allowed to impeach all the defense witnesses, including Greschner, with their prior convictions. Although Criswell's record was not used, the jury was obviously aware of his status as an inmate. The trial court also allowed the Government to present evidence of the defendants' and their witnesses' alleged membership in the "White Aryan Brotherhood." VII R. 203–05.[7] As a result, we conclude that publication of the same information could not have deprived the defendants of a fair trial.

Even if the article were more inflammatory, however, it could create prejudice only if the jury was exposed to it. We note that the trial court repeatedly admonished the jury not to read any newspaper reports about the case. VII R. 202, 400–01, 602; VIII R. 810; *see also* VII R. 139, 258, 488 (instructing the jury not to discuss the case with anyone); VIII R. 754–55 (same); *cf.* VII R. 285, 325, 466, 559 (instructing the jury to remember the earlier admonitions); VIII R. 647, 679, 866, 902, 956, 1025–26, 1101, 1112, 1123 (same).[8] Such admonition was given before the article in question was published. In the absence of evidence

to the contrary, we will presume that jurors remain "true to their oath and ... conscientiously observe the instructions and admonitions of the court." *Chase v. Crisp*, 523 F.2d 595, 600 n. 5 (10th Cir. 1975), *cert. denied*, 424 U.S. 947, 96 S.Ct. 1418, 47 L.Ed.2d 354 (1976); *United States v. Baca*, 494 F.2d 424, 429 (10th Cir.1974); *Ellis v. State of Oklahoma*, 430 F.2d 1352, 1356 (10th Cir.1970), *cert. denied*, 401 U.S. 1010, 91 S.Ct. 1260, 28 L.Ed.2d 546 (1971). In view of the admonitions here we will not reverse. *See United States v. Hart*, 729 F.2d 662, 667–68 (10th Cir.1984), *cert. denied*, 469 U.S. 1161, 105 S.Ct. 914, 83 L.Ed.2d 927 (1985); *United States v. Weiss*, 431 F.2d 1402, 1407 (10th Cir.1970); *Swallow v. United States*, 307 F.2d 81, 85 & n. 14 (10th Cir.1962), *cert. denied*, 372 U.S. 925, 83 S.Ct. 718, 9 L.Ed.2d 731 (1963).

In sum, we find no error in the trial court's handling of the newspaper report.

## VI

The defendants next contend that the Government violated Fed.R.Evid. 609(b)[9]

---

7. Although the defendants do not challenge this ruling on appeal, we note that the trial court had discretion to admit such testimony. *See United States v. Abel*, 469 U.S. 45, 105 S.Ct. 465, 469–71, 83 L.Ed.2d 450 (1984); *United States v. Silverstein*, 737 F.2d 864, 866 (10th Cir.1984).

8. The trial court, in fact, gave these admonitions before every recess except one. *See* VIII R. 1065 (ten-minute recess).

9. This rule provides as follows:

   Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.

decision to exclude any references to these items. The defendant alerted the trial court to the article and moved for a mistrial. The court, however, denied the motion without interviewing the jurors to determine whether they had read the article. *Id.* at 808.

We held that the refusal to conduct such an interview amounted to an abuse of discretion. In doing so, we relied on the "extreme" dangers posed by news reports of excluded confessions and guilty pleas. *Id.* at 809; *see Gordon v. United States*, 438 F.2d 858, 872 (5th Cir.) ("*Mares* did not hold that a defendant was entitled as a matter of law to have the jury polled on the question of whether any member had been exposed to extrajudicial publicity"), *cert. denied*, 404 U.S. 828, 92 S.Ct. 142, 30 L.Ed.2d 56 (1971). The Supreme Court has also noted that news reports are particularly prejudicial when they discuss matters already excluded by the trial court. *See Marshall v. United States*, 360 U.S. 310, 313, 79 S.Ct. 1171, 1173, 3 L.Ed.2d 1250 (1959); *see also United States v. Wilshire Oil Company of Texas*, 427 F.2d 969, 975 (10th Cir.) (distinguishing *Marshall* and *Mares* because there the articles "exposed evidence that had previously been ruled inadmissible at trial"), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970).

by asking defense witnesses Marone and Crenshaw about convictions over ten years old.[10]

## A

■ Marone testified on direct examination as an eyewitness to the stabbing. VIII R. 999–1006. On cross-examination, the Government attorney questioned Marone about his recent convictions. VIII R. 1008–09. He then asked: "Out of your 59 years approximately how many years do you believe you spent in correctional institutions?" VIII R. 1011–12. The witness answered, over objection, that he had spent 12–13 years in various prisons. VIII R. 1012.

We agree with the defendants that Rule 609(b) prohibited questioning about Marone's stale convictions.[11] We do not, however, accept the defendants' characterization of the cross-examination. In our view, the questioning went to Marone's prison experience rather than his stale convictions. Rule 609(b), on its face, does not purport to govern this sort of impeachment. The defendants argue, however, that asking a witness about his prison experi-

ence circumvents the purposes behind Rule 609. We find no such effort here.

The rule's legislative history reveals wide disagreement over the probative value of prior convictions. *See* Note, *Impeachment by Prior Conviction: Adjusting to Federal Rule of Evidence 609*, 64 Cornell L.Rev. 416, 417 (1979) ("debate over rule 609 was sustained and strident"). The compromise version eventually adopted is based on the notion that prior convictions are sometimes probative of a person's character for untruthfulness. *See* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 609[04], at 609–69 (1985). We agree with the defendants that the implication of an untruthful character is also present when the witness is asked about his experience in prison. Nonetheless, we think that this suggestion was incidental to the Government's primary purpose, which was to reveal Marone's bias. Because he had spent a substantial part of his life in prison, Marone might have tended to align himself with the defendants and against the Government. *Cf. Alford v. United States*, 282 U.S. 687, 691–92, 51 S.Ct. 218, 219–20, 75 L.Ed. 624 (1931).[12] In fact, a number of

Fed.R.Evid. 609(b).

**10.** In their *pro se* briefs, the defendants argue that the Government violated Rule 609(b) during its cross-examination of Sam Crenshaw. During direct examination, Crenshaw said that he had been imprisoned approximately 25–27 years. VIII R. 620–21. Then, on cross-examination, the Government attorney asked Crenshaw: "You don't hold it against the government that you have been in prison by your estimation for at least the past 25 years?" VIII R. 631. The defendants argue that the final question constituted improper inquiry into Crenshaw's stale convictions. As noted below, we think Rule 609 inapplicable, for the question did not involve Crenshaw's prior convictions.

**11.** Convictions over ten years old are admissible only if two conditions are met. First, the probative value of the convictions must "substantially outweigh" their prejudicial effect. Second, the cross-examiner must give advance notice in sufficient time to enable his adversary "to contest the use of such evidence." *United States v. Gilliland*, 586 F.2d 1384, 1390 (10th Cir.1978) (quoting Fed.R.Evid. 609(b)). These conditions were not met here, for the court below found that Marone's old convictions were not "particularly pertinent", VIII R. 1008, and that the

Government had failed to give proper notice, VII R. 564; VIII R. 995. As a result, we think the court below acted properly in refusing to allow the use of Marone's older convictions. *See* VIII R. 1008 (trial court's denial of Government request to go beyond the ten-year framework).

**12.** In *Alford* the defendant was convicted of mail fraud. At trial the Government presented testimony from one of the defendant's former employees, who was then in federal custody. On cross-examination, defense counsel asked the witness his place of residence, hoping to show bias toward the Government. The trial court excluded the evidence on relevancy grounds. The Supreme Court reversed, holding that evidence of the witness' environment was relevant to his credibility and should have been admitted. The Court explained:

Cross-examination of a witness is a matter of right. Its permissible purposes, among others, are ... that the jury may interpret his testimony in the light reflected upon it by knowledge of his environment, and that facts may be brought out tending to discredit the witness by showing that his testimony in chief was untrue or biased.

*Id.* (citations omitted).

defense witnesses testified that inmates have an understanding that those who cooperate with the Government might be killed. *See* VII R. 585, 594–95 (testimony of Bryan); VIII R. 630, 634, 643–44 (testimony of Crenshaw), 670 (testimony of Lopez), 695a–96 (testimony of Kell), 730 (testimony of Mills), 915 (testimony of Lanford), 946 (testimony of Dolph), 1051, 1085 (testimony of Greschner). The duration of Marone's confinement might indicate that he was sensitive to this danger. As a result, Marone might have been tempted to color his testimony in a light favorable to the defendants.

We thus conclude that Marone's cross-examination elicited pertinent evidence of possible bias, a function different than the sort of general impeachment involved in the use of prior convictions. *See Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974) (quoting 3A J. wigmore, *Evidence* § 940, at 775 (Chadbourn rev. ed. 1970)). We find no violation of Rule 609 as to Marone and, for like reasons, we feel there was no error regarding the Crenshaw testimony.

### B

██ The defendants also argue that the Government violated Rule 609 by asking Marone about an incident in which he struck a man with an axe. The following exchange occurred on direct examination:

Q. Sir, to the best of your ability are you testifying what you seen that day?

A. Exactly what I seen.

Q. Thank you, sir. I have no other questions.

A. No prompting from no one else. I just saw that. That is why I didn't have to write nothing down because how many times in your life do you run across a guy getting killed.

VIII R. 1023. When pressed on cross-examination about this response, Marone said that Andreason was the only person he had ever seen getting killed. VIII R. 1024. The Government attorney then asked: "Ever hit a man in the face with a hatchet or ax?" VIII R. 1024. The witness an-swered, over objection, as follows: "When the guy pulls a gun out what are you going to do?" VIII R. 1025.

The defendants have maintained that because this incident led to a conviction, the inquiry was prohibited by Rule 609. We disagree. The question went to Marone's conduct and experience in the incident rather than his conviction, and was not barred by Rule 609. Ordinarily this sort of impeachment falls within the scope of Fed.R. Evid. 608(b), which provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness....

Fed.R.Evid. 608(b). Here the prosecution did not use extrinsic evidence to attack the witness' credibility, but merely tried to elicit an admission that he had testified falsely during direct examination. The trial court clearly had discretion to allow such questioning under Rule 608(b) and the doctrine of specific contradiction. *See, e.g., United States v. Cusmano,* 729 F.2d 380, 383 (6th Cir.), *cert. denied,* 467 U.S. 1252, 104 S.Ct. 3536, 82 L.Ed.2d 841 (1984).

### VII

██ Finally, the defendants argue that the trial court improperly limited their direct examination of Charles Gary. Gary, who witnessed Andreason's stabbing, testified on direct examination that many Leavenworth prisoners have serious psychological problems. VIII R. 973. The following colloquy then occurred:

Q. Have you ever been in a free-for-all or anything such as an incident like this right here?

A. Yes, I have.

Q. Could you tell us your state of mind?

A. Survival.

VIII R. 973–74. The Government attorney then objected, arguing that Gary's state of mind was irrelevant. The trial court agreed and sustained the objection. VIII R. 974. We find no abuse of discretion in the ruling on relevance.

The trial court's general discretion over relevancy questions is well established. *See, e.g., United States v. Brown,* 411 F.2d 1134, 1137 (10th Cir.1969). We will reverse only upon a showing that the trial court abused its discretion. *E.g., United States v. Twilligear,* 460 F.2d 79, 81 (10th Cir. 1972). We find no such showing here. The trial court's instruction on self-defense had two elements: The defendants must have "actually believed" that deadly force was necessary, and this belief must have been reasonable. III R. 390. The court apparently concluded that Gary's mental state was irrelevant to either of these elements. We think this conclusion was reasonable and within the trial court's discretion.[13] *See* I.C. Torcia, *Wharton's Criminal Evidence* § 163, at 300 (13th ed. 1972) (third person's behavior generally inadmissible "as establishing a standard to determine whether the conduct was proper").

## VIII

Accordingly, since no reversible error has been demonstrated, the judgments are

AFFIRMED.

---

**13.** In their *pro se* brief, the defendants argue that because Gary was an expert on prison environments, his testimony was admissible under Fed.R.Evid. 702. At trial, however, the defendants did not offer Gary as an expert witness or make any mention of Rule 702. As a result, we do not think this evidentiary question is properly before us. *See United States v. Hoffner,* 777 F.2d 1423, 1425 n. 1 (10th Cir.1985).