<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

                      ____________________

No. 99-1403

                   UNITED STATES OF AMERICA,

                           Appellee,

                               v.

              JOSELITO ABREU, a/k/a JOSE A. LORA,
                                
                    Defendant, Appellant.
                                
                     ____________________
                                
                                
         APPEAL FROM THE UNITED STATES DISTRICT COURT
                                
               FOR THE DISTRICT OF RHODE ISLAND
                                
         [Hon. Ernest C. Torres, U.S. District Judge]
                                
                     ____________________
                                
                            Before
                                
                    Torruella, Chief Judge,
                Coffin, Senior Circuit Judge,  
                  and Lynch, Circuit Judge.
                                
                     ____________________
                                
                                
 Thomas G. Briody for appellant.
 Donald C. Lockhart, Assistant U.S. Attorney, with whom
Margaret E. Curran, United States Attorney, and Zechariah Chafee,
Assistant U.S. Attorney, were on brief, for appellee.

                      ____________________
                        January 31, 2000
                      ____________________

 LYNCH, Circuit Judge.  This case concerns the
administration of justice for indigent defendants under the
Criminal Justice Act, 18 U.S.C.  3006A.  More particularly, it
concerns applications by indigent defendants for government funding
of expert services "necessary for adequate representation."  18
U.S.C.  3006A(e)(1).  Because the district court violated the
provision of this statute providing that such applications be heard
ex parte, we vacate and remand.
 Joselito Abreu pled guilty to possession with intent to
distribute over 500 grams of cocaine in violation of 21 U.S.C.
841(a)(1) and (b)(1)(B).  Abreu is a citizen of the Dominican
Republic and required the assistance of an interpreter throughout
the legal proceedings.  He has a history of small criminal offenses  
and, in this case, was caught with about $30,000 worth of cocaine
and related paraphernalia in his apartment.  After his arrest, the
Justice Department notified the facility in which he was being held
that "Abreu had some suicidal and mental health concerns."  During
his initial screening at the facility, Abreu indicated that he had
attempted suicide the night before.  
 In preparation for Abreu's change of plea hearing, his
court-appointed counsel asked him whether he was taking a certain
medication.  Abreu said he was; however, the nurse at the detention
facility said Abreu was not taking the medication and had not been
doing so for several weeks.  When asked about the medication at the
plea hearing, Abreu contradicted the nurse and said that he had
taken the medication "[a]bout four days ago" (although he
maintained that this medication did not affect his ability to make
a plea).  When asked by the court whether he had been read the
indictment, Abreu said he could not remember and that he sometimes
had problems remembering things.  
 Concerned about these facts, about Abreu's difficulties
in understanding certain things, and about inconsistent statements
Abreu made to him (that counsel felt were protected by the
attorney-client relationship), Abreu's counsel sought an evaluation
by a licensed psychologist before sentencing.  Because Abreu is
indigent, counsel utilized the procedure set forth in 18 U.S.C.
3006A and filed an ex parte application for the funding of expert
services.  The sum sought was $550.  Counsel represented that while
he believed there was a basis to seek a psychological evaluation,
it was not clear whether such an evaluation would support a request
for a downward departure for "diminished capacity" under U.S.S.G.
5K2.13.  If the evaluation did, counsel indicated that he might
seek such a departure at sentencing.  If it did not, he would not.
 The district court first held an ex parte hearing to
determine whether it should consider the application ex parte.  It
determined that it would not.  At the court's direction, counsel
for Abreu then refiled the application for funding with notice to
the government and the government filed an opposition.  The
district court held a hearing at which the government was present.  
Because the government was present, defense counsel declined to
place on the record certain confidential matters that formed part
of the basis for the application.  The court denied the request for
services.  The defense, deprived of the expert examination it had
requested, did not argue for a lesser sentence on the basis of
diminished mental capacity.  Abreu was eventually sentenced to 70
months imprisonment.  He now appeals.
 This court has appellate jurisdiction over  3006A
determinations that impact a defendant's trial or sentence.  See
United States v. Manning, 79 F.3d 212, 218-19 (1st Cir. 1996)
(reviewing a district court's denial of a request for expert
services for trial under  3006A); United States v. Mateos-Sanchez,
864 F.2d 232, 239-40 (1st Cir. 1988) (reviewing a district court's
decision to deny travel expenses requested under  3006A for the
purpose of interviewing potential witnesses); see also United
States v. Bloomer, 150 F.3d 146, 149 (2d Cir. 1998) (noting that
appellate review is available for  3006A determinations "that
impact a defendant's trial, sentence, or collateral challenge to a
conviction or sentence").
 Abreu says that the district court violated the plain
terms of the statute -- which requires that applications for such
funding by indigent defendants be handled ex parte -- and requests
that the matter be remanded for reconsideration ex parte;
alternatively, Abreu says that the court should review and reverse
the district court's ultimate determination that his request for
the $550 expenditure was not necessary.
 The prosecution does not concede that the application was  
required to be heard ex parte by the statute, but neither does it
defend the trial court's decision to make the application the
subject of an adversary proceeding.  At oral argument, the
government said it had initially considered requesting a limited
remand so that the court could hear ex parte the additional
information that Abreu's counsel viewed as confidential and
reconsider the matter.  The government decided to contest the
matter, however, since, it argues, a remand is not necessary
because there was, in the end, no prejudice to the defendant.  
There was no prejudice, the government says, because it was clear
from the record and from the judge's own observations that the
defendant would never have been able to meet the high threshold
necessary for a "diminished capacity" adjustment.  See U.S.S.G.
5K2.13; see also United States v. Nuez-Rodriguez, 92 F.3d 14, 24
(1st Cir. 1996).
 The government's first instincts were correct.  We think
it premature to reach the question of prejudice or the merits of
the decision to deny funding.  As to the government's argument that
we should overlook any problem, it is true, as the government says,
that review of the merits of such a  3006A decision is
deferential.  See Manning, 79 F.3d at 218 ("A district court's
denial of a request for such [expert] services [under  3006A] is
reviewed only for an abuse of discretion.").  But because the trial
court did not follow the required procedures, material information
is not in the record and reaching the merits would be
inappropriate.
 The district court committed error in refusing to
entertain the application ex parte under 18 U.S.C.  3006A(e)(1).  
The statutory provision says:
   (e)  Services other than counsel. --
            (1)  Upon request. -- Counsel for a person who is
        financially unable to obtain investigative,
        expert, or other services necessary for
        adequate representation may request them in
        an ex parte application.  Upon finding,
        after appropriate inquiry in an ex parte
        proceeding, that the services are necessary
        and that the person is financially unable to
        obtain them, the court . . . shall authorize
        counsel to obtain the services.

18 U.S.C.  3006A(e)(1).  Although the statute expressly provides
that the proceeding be ex parte, the district court found the
statute's language to be "very ambiguous."  The judge did not
explain why he viewed this language as ambiguous.  At the adversary
hearing, the court simply said that "it just didn't seem to make
sense" to hear the application ex parte where "the Defendant had
already pled guilty, and what we were dealing with was a sentencing
issue."
 The distinction the district court drew, for  3006A
purposes, between sentencing and trial strikes us as unsound.  To
our knowledge, no reported decision has held that the ex parte
provisions of  3006A do not apply to the sentencing stage, and the
government does not argue that  3006A does not apply to
sentencing.  Further, nothing in the statute limits its
applicability to pre-sentencing proceedings.  Rather, the statutory
structure indicates that it does apply. Subsection (e) refers to
services "necessary for adequate representation."  18 U.S.C.
3006A(e)(1).  Under the statute, appointed counsel represent
indigent clients through sentencing and beyond.  In fact,
subsection (c) of the statute, provides that:
   A person for whom counsel is appointed shall be
 represented at every stage of the proceedings from his
 initial appearance before the United States magistrate or
 the court through appeal, including ancillary matters
 appropriate to the proceedings. . . .

18 U.S.C.  3006A(c).  The legislative history associated with this
provision reaffirms that "adequate representation" requires support
throughout all phases of the proceedings:  "This provision
[subsection (c)] is necessary to insure that the rights of the
person are fully protected.  Many times remedies technically
outside the scope of the trial proper may be necessary . . . ."  
H.R. Rep. 91-1546 (1970), reprinted in 1970 U.S.C.C.A.N. 3982,
3989; see also H.R. Rep. 88-864 (1963), reprinted in 1964
U.S.C.C.A.N. 2990, 2992 ("[A] defendant is entitled to
representation by counsel at every stage of the proceedings, from
his initial appearance through appeal.").  Thus, reading the
statute as a whole, it appears that Congress intended the
provisions of subsection (e) to apply to sentencing.  While other
circuits have assumed this to be so, see e.g., Bloomer, 150 F.3d at
148 (noting that "applications for appointment of an expert are ex
parte and nonadversarial" in a case where expert fees for testimony
at re-sentencing were sought); United States v. Roman, 121 F.3d
136, 143 (3d Cir. 1997) (reviewing a  3006A application for a
psychiatric evaluation to aid in requesting a downward departure at
sentencing); United States v. Harden, 70 F.3d 1263 (unpublished
table decision), in 1995 WL 703543, at *1 (4th Cir. 1995) (same);
United States v. Smith, 987 F.2d 888, 891 (2d Cir. 1993) (same), it
appears that this may be the first circuit opinion to so hold.  It
was error for the district court to conclude that the "ex parte
proceeding" language of subsection (e) did not apply to sentencing.
 Nor do we see any ambiguity at all in subsection (e)'s
use of the term "ex parte."  The statute says plainly that
proceedings and applications should be ex parte.  The text is not
ambiguous in any sense and the meaning of "ex parte proceeding" is
well established.  See, e.g., United States v. Meriwether, 486 F.2d
498, 506 (5th Cir. 1973).  Black's Law Dictionary defines it as a
"proceeding in which not all parties are present or given the
opportunity to be heard."  Black's Law Dictionary 1221 (7th ed.
1999).  It further defines "ex parte" as "[d]one or made at the
instance and for the benefit of one party only, and without notice
to, or argument by, any person adversely interested."  Id. at 597.  
 This lack of ambiguity is underscored by provisions in
the Guide to Judiciary Policies and Procedures, promulgated
pursuant to  3006A(h), which says that the Judicial Conference of
the United States "may, from time to time, issue rules and
regulations governing the operation of plans formulated under this
section."  18 U.S.C.  3006A(h).  The Guide provides:
   Ex parte applications for services other than counsel
 under subsection (e) shall be heard in camera, and shall
 not be revealed without the consent of the defendant.  
 The application shall be placed under seal until the
 final disposition of the case in the trial court, subject
 to further order of the court.  Maintaining the secrecy
 of the application prevents the possibility that an open
 hearing may cause a defendant to reveal his or her
 defense.

7 Administrative Office of the United States Courts, Guide to
Judiciary Policies and Procedures, ch. III, pt. A,  3.03.
 This is consistent with the legislative history, which
states that an ex parte proceeding is provided for in subsection
(e) so as to "prevent[] the possibility that an open hearing may
cause a defendant to reveal his defense."  H.R. Rep. No. 88-864
(1963), reprinted in 1964 U.S.C.C.A.N. 2990, 2990; see United
States v. Gonzales, 150 F.3d 1246, 1258 n.16 (10th Cir. 1998).   
 The circuit courts have recognized the importance of such
applications being ex parte in trial proceedings.  In United States
v. Sutton, 464 F.2d 552 (5th Cir. 1972), the court reversed a
conviction where the trial court heard a request for an
investigator under  3006A(e) in the presence of the prosecution,
saying "[t]he ex parte requirement could hardly be expressed in
clearer language."  Id. at 553.  And in Marshall v. United States,
423 F.2d 1315 (10th Cir. 1970), the court reversed the judgment
where a  3006A(e) application was heard in an adversarial
proceeding, noting that "[t]he manifest purpose of requiring that
the inquiry be ex parte is to insure that the defendant will not
have to make a premature disclosure of his case."  Id. at 1318; see
also Lawson v. Dixon, 3 F.3d 743, 751 (4th Cir. 1993) (stating that
3006A "has been interpreted as virtually guaranteeing that
decisions on expert-appointment motions will be made, as that
statute requires, 'after appropriate inquiry in an ex parte
proceeding'"); United States v. Chavis, 476 F.2d 1137, 1144 (D.C.
Cir. 1973) ("We agree that the statutory scheme means that not to
provide an opportunity for an ex parte hearing on the matter does
constitute error.").
 While evidentiary rules at sentencing may be relaxed,
see, e.g., United States v. Cetina-Gomez, 951 F.2d 432, 435 (1st
Cir. 1991), sentencing is still an adversarial proceeding, see
Burns v. United States, 501 U.S. 129, 135 (1991) (noting that the
Federal Rules of Criminal Procedure "contemplate[] full adversary
testing of the issues relevant to a Guidelines sentence"); United
States v. Pellerito, 878 F.2d 1535, 1544 (1st Cir. 1989).  
Defendants do not give up their Fifth Amendment rights at
sentencing.  See United States v. Montilla-Rivera, 115 F.3d 1060,
1065 (1st Cir. 1997).  Given the extent to which sentencing
determines a defendant's liberty, it is just as crucial that the
defendant have a fair opportunity to marshal a defense at the
sentencing phase as at any other phase of the criminal proceedings.  
In fact, the Supreme Court, in a capital case, has said that due
process requires that, where "the defendant's mental condition [is]
relevant to his criminal culpability and to the punishment he might
suffer," the government provide to indigent defendants expert
psychiatric testimony at "the sentencing phase."  Ake v. Oklahoma,
470 U.S. 68, 80, 83-84 (1985).
 There is another principle at stake: fair treatment of
indigents.  Defendants who are able to fund their own defenses need
not reveal to the government the grounds for seeking a psychiatrist
who might potentially testify at sentencing.  To require indigent
defendants to do so would penalize them for their poverty.  The
words of Judge Aldrich in an opinion of this court more than thirty
years ago still hold true:
   [W]e would regard the purpose of the . . . rule as
 apparent on its face to be in recognition of the
 principle that defendants are not to be avoidably
 discriminated against because of their indigency.

Holden v. United States, 393 F.2d 276, 278 (1st Cir. 1968)
(construing the requirement in Rule 17(b) that subpoenas issue on
an ex parte application of a defendant).
 The district court was in error in not handling the
entire application on an ex parte basis.  The scope of the remand
is narrow.  The district court must hear ex parte any matters that
have not already been presented by counsel and then reconsider
whether it should grant the application.  The only new matters that
counsel may present are those he refrained from presenting before
on grounds of privilege or confidentiality.  If the court decides
to grant the application, then counsel for defendant must advise
the district court, after the psychological examination, whether
Abreu seeks re-sentencing.  If the court denies the application,
then a sentence of the same term as the original sentence will be
reinstated.  If Abreu wishes to take an appeal from the denial of
the application at that point, he must file a new notice of appeal.  
In the interim, the sentence is vacated and the case remanded for
further proceedings in light of this opinion.
 So ordered.

</body>

</html>