# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 01-2526

_____

United States of America,      *

     *

        Plaintiff-Appellee,      *

     *   Appeal from the United States

      v.      *   District Court for the

     *   District of North Dakota.

Keane Vallie,      *

     *

        Defendant-Appellant.      *

_____

Submitted: December 12, 2001

Filed: March 27, 2002

_____

Before McMILLIAN, HEANEY, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Keane Vallie was convicted by a jury of sexual abuse under 18 U.S.C. § 1153 and § 2242(2)(A) and incest under 18 U.S.C. § 1153 and North Dakota Century Code §§ 12.1-20-11, -32.01. He appeals his convictions, and we affirm.

On the evening of February 4, 2000, Vallie was at the home of his sister, Elma Martell, on the Turtle Mountain reservation. A number of people had congregated there to visit, listen to music, and drink alcohol. Martell went to bed at approximately 4:00 a.m. Shortly after she fell asleep, she was awakened by a man having sexual

intercourse with her. The man was behind her and said nothing. Martell did not suspect that he was not her husband, and the man repeated the act approximately thirty minutes later. The man pulled up Martell's underwear and covered her when he was finished, which aroused her suspicions because this type of behavior was not like her husband. Martell spoke to the man as he was leaving the room, he turned, and she saw then that he was Vallie.

Martell cleared everyone out of her residence, and one of her sisters came over and gathered Martell's bedding and underwear into a bag and called the police. Officers sent the bag to the FBI laboratory for DNA analysis, along with rape kits obtained from Martell and Vallie. Analysis revealed that all DNA present on the vaginal swabs and underwear came from Martell and Vallie. Vallie was indicted for sexual abuse, under 18 U.S.C. § 2242(2)(A) and § 1153, and incest, under 18 U.S.C. § 1153 and North Dakota Century Code §§ 12.1-20-11, -32-01. The case was tried before a jury which convicted on both counts. The district court[1] denied Vallie's motion for a new trial and sentenced him to 70 months.

Vallie appeals his convictions, arguing that the district court erred by admitting the DNA evidence, undisclosed blood alcohol tests, and testimony from an investigator who gave inaccurate grand jury testimony. Vallie also contends that the court did not adequately sequester witnesses and that the prosecutor committed misconduct by asking him about a prior offense unrelated to sexual conduct and by vouching for the credibility of witnesses. Finally, he contends that 18 U.S.C. § 1153(b) violates his right to equal protection because it uses state criminal law to define federal offenses and thus imposes nonuniform standards of liability and punishment.

---

[1] The Honorable Patrick A. Conmy, United States District Court for the District of North Dakota.

Vallie asserts that the district court erred by admitting the DNA evidence because it was obtained from items that were collected by Martell's sister and that lacked a proper chain of custody. Martell's bedding and underwear were potential sources of highly relevant evidence since she claimed she had been sexually assaulted. Physical evidence may be admitted if "a reasonable probability exists that the evidence has not been changed or altered," United States v. Cannon, 88 F.3d 1495, 1503 (8th Cir. 1996). In order to establish a faulty chain of custody, the proponent needs to show "bad faith, ill will, or proof of tampering." Id. Vallie has made no such showing, and the district court did not abuse its discretion in admitting the physical evidence. Moreover, any defect in the collection of the DNA evidence would have gone more to its weight than its admissibility. See United States v. Beasley, 102 F.3d 1440, 1448 (8th Cir. 1996); United States v. Chischilly, 30 F.3d 1144, 1154 (9th Cir. 1994).

Vallie also renews his objection that the court erred by admitting the results of Martell's blood alcohol tests because they had not been previously disclosed to defense counsel. The government is under an obligation to disclose exculpatory evidence, Brady v. Maryland, 373 U.S. 83 (1963). To prove a Brady violation a defendant must show that "the prosecution suppressed the evidence, the evidence was favorable to the accused, and the evidence was material to the issue of guilt or punishment." United States v. Duke, 50 F.3d 571, 577 (8th Cir. 1995). The district court did not abuse its discretion in admitting the blood alcohol test results because there was no evidence that the prosecution had suppressed the test results and because Martell's intoxication was not a defense to the crimes with which Vallie was charged. Although Martell's level of intoxication was relevant to her credibility as a witness, the government introduced the test results the day before she testified, and Vallie had an opportunity to use them to attack her credibility.

Vallie argues that the district court erred by allowing an investigator to testify at trial after he erred in his testimony before the grand jury. Vallie points to the following inaccuracies in the investigator's testimony to the grand jury: the

-3-

investigator said that DNA evidence was "found in the saliva – or vagina swabs and on the mattress" (the DNA came from the vaginal swabs and the underwear Martell wore to bed), that actual semen was found when it was not, and that Martell was awake when the man first came into her bedroom. Vallie brought out the inconsistencies in the testimony of the investigator on his cross examination at trial, but Vallie did not object during direct examination of the witness. Our review is therefore for plain error. United States v. McBride, 862 F.2d 1316, 1319 (8th Cir. 1988). An indictment cannot be based on perjured testimony, United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974), and the government may not use perjured testimony at trial if there is a reasonable chance that it would affect the jury's judgment, United States v. Martin, 59 F.3d 767, 770 (8th Cir. 1995). Testimony shown to be inconsistent with prior statements is not necessarily perjury, however, and not every contradiction is material. Id. Although the investigator's grand jury testimony was not completely accurate, it did not amount to perjury nor materially misrepresent the nature of the DNA evidence or eyewitness testimony possessed by the government. There was no prejudice to Vallie and no plain error in allowing the investigator to testify at trial.

Vallie argues that the district court erred by allowing courtroom spectators to communicate with sequestered witnesses and by calling sequestration "asinine." Sequestration of most witnesses is mandatory when requested, Fed. R. Evid. 615, but the district court is granted wide latitude in implementing sequestration orders and the standard of review is abuse of discretion. United States v. Kindle, 925 F.2d 272, 276 (8th Cir. 1991). The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty. Geders v. United States, 425 U.S. 80, 87 (1976). There is no evidence that any conversations between trial observers and sequestered witnesses resulted in tailored testimony or otherwise prejudiced Vallie in any way. See Kindle, 925 F.2d at 276. The rules permit sequestration and we do not endorse use of the term "asinine" in respect to it, but the court's remark was made outside the presence of the

jury. There is no showing that the court abused its discretion in managing the sequestration or that it prejudiced Vallie in any way.

Vallie argues that his convictions should be reversed because it was misconduct for the prosecutor to ask him about a prior offense unrelated to sexual conduct. A prosecutor commits misconduct by asking an improper question so offensive as to prejudice the defendant's substantial rights and deprive him of a fair trial. United States v. Guerra, 113 F.3d 809, 815 (8th Cir. 1997). Three factors are used to judge the prejudicial effect of any such misconduct: its cumulative effect, any curative actions taken by the trial court, and the strength of the evidence against the defendant. Id.; United States v. Hernandez, 779 F.2d 456, 460 (8th Cir. 1985). Evidence of prior sexual offenses is admissible in a case in which a defendant is accused of sexual assault, Fed. R. Evid. 413, but the charges previously brought against Vallie were not for a sexual offense. The prosecutor sought to attack Vallie's credibility with this question. The district court concluded that the question was improper, see Fed. R. Evid. 608(b), and relied on the curative effect of the preliminary instructions given to the jury which told it not to consider evidence for which an objection was sustained. We find no prejudice to Vallie's substantial rights. The question was asked only once, the district court immediately sustained the objection to it, and substantial DNA and eyewitness testimony supported Vallie's conviction. See United States v. Krapp, 815 F.2d 1183, 1186 (8th Cir. 1987).

Vallie also argues that the prosecutor impermissibly vouched for the credibility of the witnesses when she stated during closing argument that she knew every witness. See Guerra, 113 F.3d at 815; United States v. Hale, 1 F.3d 691, 693-94 (8th Cir. 1993). Vallie did not object to the challenged statement during closing argument, request a curative instruction on it, or move for a mistrial. The prosecutor's statement was made in response to defense counsel's argument to the jury that the prosecutor was proud of the government's case against Vallie. She countered that claim by stating that although she was from the Turtle Mountain Indian Reservation and knew

all the witnesses, including Vallie, "Nothing about this makes me proud." Understood in its context, the prosecutor's statement was neither improper nor prejudicial.

Finally, Vallie argues that 18 U.S.C. § 1153(b) violates his right to equal protection because it uses state criminal law to define federal offenses and thus imposes differing standards of liability and punishment depending upon where an offense is committed. Section 1153(a) creates exclusive federal jurisdiction over certain crimes, including sexual assault or incest, committed by "[a]ny Indian...within the Indian country." Federal law does not define incest, but § 1153(b) provides that it "shall be defined and punished in accordance with the laws of the State in which such offense was committed." Vallie notes that each state defines and punishes incest differently and that an Indian committing incest on a reservation located in one state will receive different treatment than an Indian committing incest on a reservation located in another state, even though both reservations are within exclusive federal jurisdiction.

In United States v. Yazzie, 693 F.2d 102, cert. denied, 103 S.Ct. 1231 (1982), enrolled Indians were convicted of incest under Arizona law for acts committed on the Navajo Reservation. They would not have been prosecuted for the same acts on the New Mexico portion of the reservation, however, because that state defined the crime of incest differently than Arizona. Id. at 103. The Ninth Circuit rejected an equal protection challenge raised by the defendants, concluding that "it was rational for Congress to provide that incest under [18 U.S.C. § 1153] was to be defined and punished as provided by state law, in order to ensure that Indians and non-Indians who commit identical acts in the same location would be subject to identical punishments." Id. at 104. We agree with this reasoning and reject Vallie's equal protection challenge to the constitutionality of 18 U.S.C. § 1153.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS,  EIGHTH CIRCUIT.