# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3353

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Nebraska. |
| | * | |
| Jeffrey H. Collins, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  February 13, 2003

Filed:  August 25, 2003

_____

Before LOKEN,[1] RILEY, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Jeffrey H. Collins raises numerous issues challenging his conviction and life sentence for conspiring to distribute and for possession with intent to distribute more than 500 grams of methamphetamine. For the reasons herein, we affirm the district court.[2]

---

[1] The Honorable James B. Loken became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 1, 2003.

[2] The Honorable Richard G. Kopf, Chief Judge, United States District Court for the District of Nebraska.

I.

Because Collins challenges the sufficiency of the evidence used to convict him, we summarize the evidence adduced at trial. Seven people familiar with Collins's drug sales testified against him. These witnesses–Thomas Horan, Brenda Stewart, Pamela Erickson, Douglas Rydberg, James Hald, Susan Gomez, and Matthew Matejka–testified that Collins sold them methamphetamine at various times and in various amounts during the two-year period charged in the indictment, sometimes accepting property rather than money in exchange for methamphetamine.[3]

---

[3] Each of these witnesses engaged in drug transactions with Collins from March 1999 to September 15, 2001, as follows: in April 2001, Horan bought methamphetamine from Collins twice, for a total of one-eighth of an ounce, at Bart's Motel in Council Bluffs, Iowa; between 1999 and 2001, Stewart bought methamphetamine from Collins on various occasions (once at Bart's Motel), and during a six-month period in 2000, she bought one-fourth of an ounce to one ounce of methamphetamine about every other day; Erickson, a twenty-year acquaintance, testified that she first bought drugs from Collins within the first two years of meeting him, and that the last time she bought drugs from Collins was on the day he was arrested; Rydberg testified that he bought at least one-half of an ounce of methamphetamine on at least six occasions, and that Hald was the "middleman" in many of the transactions from July 2000 to January 2001; Hald, a fifteen-year acquaintance of Collins's, testified that over one summer, he and Collins engaged in forty to fifty transactions in a two-month period for amounts ranging from one-sixteenth of an ounce to half pounds, with the weight of all transactions totaling at least three pounds, and that in March or April 2001, on six to eight occasions, Hald resold a total of one to two ounces of methamphetamine to others with Collins's knowledge; Gomez testified that she bought methamphetamine from Collins eight to ten times in the spring of 2001 in amounts ranging from one-sixteenth of an ounce to one-quarter of an ounce, and that the largest amount she saw in Collins's possession was about one pound of methamphetamine on three or four occasions; Matejka testified that he first bought methamphetamine from Collins in 1999, that Collins paid him with one-sixteenth of an ounce of methamphetamine for helping friends move

In addition to the regular drug transactions, these witnesses testified about Collins's related drug activities. Stewart testified that she committed forgeries to obtain cash or merchandise to pay for drugs. Collins would place an "order," and Stewart would go to a store and fraudulently acquire the item.

Rydberg testified that he usually bought methamphetamine from Hald, who first bought the drugs from Collins. Rydberg testified that he would either buy the drugs "on credit," or pool several people's money to buy a larger amount of methamphetamine at a lower price. Rydberg testified that Hald was the "middleman." Hald verified that Collins approved reselling the methamphetamine because Collins would not sell to strangers. Hald also testified that he once traded a Plymouth Sundance automobile to Collins for an ounce of methamphetamine, and at trial, the government offered the car title to show the change in ownership from Hald to Collins. Gomez, who had known Collins since 1994, also would pool her money with other customers' money to buy larger quantities at lower prices. She testified that she would "skim some off the top" from the purchases for herself.

Stewart, Erickson, Hald, and Matejka testified about an incident at Matejka's residence that resulted in Matejka's incarceration for possession of methamphetamine allegedly belonging to Collins. Matejka testified that on February 6, 2001, Collins went to Metejka's house to be paid for a drug deal. While there, the police entered the house to serve an arrest warrant on Matejka. Matejka was charged after the police found him with 49.5 grams of methamphetamine in the basement, drugs that Matejka claimed belonged to Collins. Hald testified that Matejka told him that Collins framed him for the methamphetamine the police found in the raid. Stewart also testified that

---

some furniture, and that until February 5, 2001, he and Collins engaged in up to eighty transactions of one gram to one ounce per transaction, for a total of over one-half of a pound of methamphetamine.

Collins sent a letter to her while she was in jail indicating that Collins refused to admit that the drugs he had taken to Matejka's house were his.

Emma Chance, the owner of Bart's Motel in Council Bluffs, testified that Collins rented a room at the motel sixteen days in January, February, and March of 2001, paying cash for each transaction. Ron Riethmuller, records administrator for the Nebraska Department of Correctional Services, testified that during the time-frame in the indictment, Collins was on "work release." Consequently, no one from the corrections department supervised or monitored Collins during the day as long as he returned to the work-release center at night. Riethmuller also noted that Collins was paroled on February 25, 2000, but was returned to the correctional facility on August 14, 2000. However, the state discharged Collins from the correctional service on January 4, 2001.

Several police officers testified about Collins's behavior at the time of his arrest on September 27, 2001. The officers testified that Collins attempted to escape by jumping into his car and leading the police on a chase. During the chase, Collins threw a package out of the car. The police recovered the package and discovered that it contained 16.1 grams of methamphetamine.

Based on above evidence, a jury convicted Collins of conspiracy to distribute and possess with intent to distribute methamphetamine. The court then sentenced Collins to life in prison. Collins appeals his conviction and sentence.

## II.
### A. *Sufficiency of the Evidence*

Collins first argues that there was insufficient evidence to convict him of conspiracy because the evidence merely established a buyer-seller relationship between Collins and numerous individuals without showing a conspiracy to distribute drugs. He argues that the jury "misinterpreted" the facts and the jury instructions, and

that while he may have associated with convicted felons and drug dealers, the evidence does not support a finding that he conspired with them to distribute drugs.

"The standard of review of an appeal concerning sufficiency of the evidence is very strict, and the verdict of the jury should not be overturned lightly." *United States v. Crossland*, 301 F.3d 907, 913 (8th Cir. 2002) (quoting *United States v. Burks*, 934 F.2d 148, 151 (8th Cir. 1991)). In reviewing the sufficiency of the evidence on appeal, the court views the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict. *United States v. Erdman*, 953 F.2d 387, 389 (8th Cir. 1992). We will reverse only if no reasonable jury could have found the accused guilty beyond a reasonable doubt. *United States v. Harmon*, 194 F.3d 890, 892 (8th Cir. 1999).

To prove that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; (3) that the defendant intentionally joined the conspiracy. *United States v. Jones*, 101 F.3d 1263, 1267 (8th Cir. 1996); *United States v. Westbrook*, 896 F.2d 330, 338 (8th Cir. 1990). Tacit understanding–as opposed to mere presence at and knowledge of an intended drug sale–will suffice; a formal agreement is unnecessary. *Jones*, 101 F.3d at 1267 (citing *United States v. Shoffner*, 71 F.3d 1429, 1433–34 (8th Cir. 1995)). The existence of a conspiracy may be proved by either direct or circumstantial evidence. *United States v. Jenkins*, 78 F.3d 1283, 1287 (8th Cir. 1996). Evidence of association or acquaintance, though relevant, is not enough by itself to establish a conspiracy. *United States v. Ivey*, 915 F.2d 380, 384 (8th Cir. 1990).

Based on the facts established at trial, the evidence supports Collins's conviction for conspiracy. The evidence establishes that Collins himself would not sell methamphetamine to strangers, but instead would sell substantial amounts of

methamphetamine to Hald or Rydberg, for example, who would resell the drugs to numerous individuals. The evidence proves that Collins knowingly participated in and promoted this scheme. Furthermore, Collins's challenge to the veracity and credibility of the various witnesses is to no avail–questions of credibility are the province of the jury. *See United States v. Chavez*, 230 F.3d 1089, 1091 (8th Cir. 2000); *United States v. Fuller,* 942 F.2d 454, 458 (8th Cir. 1991).

### B. *Quantity of Drugs Attributed to Collins*

Collins next argues that the district court and the jury erroneously attributed more drugs to Collins than he could have sold in the time frame provided in the indictment. Collins argues that it was impossible for the witnesses collectively to have bought more than 500 grams of methamphetamine from him because he was incarcerated during seven months in 2000. Collins provides no legal support for his argument.

The government responds that the sentencing judge was the same judge who presided over trial, and that in such cases, the sentencing court is not required to hold an evidentiary hearing to resolve any factual challenges such as drug quantity. *See United States v. Wiggins,* 104 F.3d 174, 178 (8th Cir. 1997). As such, the district court properly calculated Collins's offense level using the volume of drugs the jury calculated in this case.

A sentencing court's quantity calculations are factual findings and therefore, are reviewed for clear error. *United States v. Jimenez-Villasenor*, 270 F.3d 554, 561 (8th Cir. 2001). A reviewing court will not overturn a finding of drug quantity unless the entire record definitely and firmly convinces the court that a mistake has been made. *United States v. Granados*, 202 F.3d 1025, 1028 (8th Cir. 2000).

Collins's "impossibility" argument fails. The evidence proves that the witnesses knew of Collins's incarceration and testified that they bought drugs either from him

-6-

or from Collins's middlemen when he was not incarcerated. In addition, Collins's challenge is based (in part) on his attack against the witnesses' credibility and their recall regarding the amount of drugs he sold to them. We leave this credibility issue for the jury. *Chavez*, 230 F.3d at 1091; *Fuller*, 942 F.2d at 458. Despite Collins's seven-month incarceration, the evidence provided a reasonable jury sufficient evidence to have found Collins guilty beyond a reasonable doubt.

C. *Sentence Illegality Under Apprendi and the Eighth Amendment*

Collins next argues that the district court assessed an excessive and illegal sentence under *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and the Eighth Amendment. Specifically, Collins argues that the court violated *Apprendi* by failing to submit his prior convictions to the jury for enhancement purposes. Additionally, he contends the court's life sentence for these drug offenses constituted "cruel and unusual" punishment under the Eighth Amendment.

1. *Alleged Apprendi Violation*

In *Apprendi*, the United States Supreme Court stated, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. We have applied this rule in *United States v. Carter*, 270 F.3d 731 (8th Cir. 2001) in response to the same argument that Collins asserts. In *Carter*, the defendant challenged his 130-month sentence for a drug offense, which was enhanced under 21 U.S.C. § 841(b) based on a prior drug felony conviction. We held that evidence of a prior conviction need not be submitted to the jury for the enhancement to apply. *Id.* As such, the district court did not err in not submitting Collins's prior convictions.

2. *Eighth Amendment Violation*

Collins also asserts that the imposition of a mandatory life sentence is cruel and unusual punishment in violation of the Eighth Amendment. He claims that the

sentence is "grossly disproportionate" to the crime and argues that this was a "simple drug conspiracy" that, when compared with similar crimes, did not warrant a life sentence.

The Eighth Amendment "forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan,* 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment) (quoting *Solem v. Helm,* 463 U.S. 277, 288 (1983)); *accord United States v. Frieberger,* 28 F.3d 916, 920 (8th Cir. 1994); *United States v. Jones,* 965 F.2d 1507, 1518 (8th Cir. 1992). The Supreme Court concluded in *Harmelin* that a state sentence of mandatory life imprisonment without the possibility of parole for possessing 672 grams of cocaine did not violate the Eighth Amendment, despite the fact that the defendant had no prior felony convictions. 501 U.S. at 994.

We have held that mandatory minimum penalties for drug offenses do not violate the Eighth Amendment's prohibition of cruel and unusual punishments. *United States v. Mendoza,* 876 F.2d 639, 640–41 (8th Cir.1989). It is well settled that a sentence within the range provided by statute is generally not reviewable by an appellate court. *United States v. Richard*, 872 F.2d 253, 255 (8th Cir. 1989). Furthermore, such a sentence that falls within the range prescribed by statute has never been found to be an Eighth Amendment violation. *Mendoza*, 876 F.2d at 639 (citing *Hutto v. Davis*, 454 U.S. 370, 372 (1982)).

In *United States v. Prior*, 107 F.3d 654, 660 (8th Cir. 1997), we did not find a violation of the Eighth Amendment when the district court sentenced the defendant to life imprisonment without the possibility of parole based on his conviction of possessing with intent to distribute 1,147.6 grams of methamphetamine and his prior record of three drug felony convictions. We compared Prior's case to the facts of *Harmelin* and concluded that Prior's sentence did not violate the Eighth Amendment's ban on cruel and unusual punishments, even in light of Prior's argument that his

conduct as an addict was not as egregious as that of "larger-scale distributors." We stated:

> Such a proportional analysis is only appropriate after an initial comparison of the crime to the sentence for which it is imposed leads to an inference of gross disproportionality. *United States v. Johnson*, 944 F.2d 396, 409 (8th Cir.) (relying on *Harmelin*), *cert. denied*, 502 U.S. 1008 (1991). We have noted that the possession of narcotics with the intent to distribute is an offense "at the root of some of the gravest problems facing our country. The 'fruit' of the drug plague is everywhere; it fills our jails, our courts, our streets, and our nurseries." *United States v. Meirovitz*, 918 F.2d 1376, 1381 (8th Cir. 1990), *cert. denied,* 502 U.S. 829 (1991). Prior's three previous convictions indicate that he has been involved in drug distribution for many years, and his actions have furthered the spread of this plague.

*Prior*, 107 F.3d at 660.

Under these facts, Collins's two prior felonies used to enhance this sentence were also drug crimes.[4] As in *Prior*, the repeated nature of similar crimes particularly lends the matter to the enhancement provision of § 841(b) and does not warrant a finding of disproportionality under the Eighth Amendment. Collins's constitutional claim thus cannot succeed.

### D. *Mistrial/New Trial for Sequestration Violation*

Collins next argues that the district court erred in refusing to grant a mistrial or a new trial after two alleged violations of the court's sequestration order. Collins

---

[4] Collins's prior felonies involved the delivery and manufacture of marijuana and a controlled substance.

alleges that the first violation occurred when the United States Marshall Service placed prosecution witnesses Rydberg and Hald in the same holding cell as they awaited their turns to testify. Collins claims that the second violation occurred when Sheriff Deputy Robert Jones, prior to being called to testify, entered the courtroom during the testimony of Emma Chance, another prosecution witness. Collins argues that there was "manifest necessity" for granting a mistrial or a new trial under these circumstances, and nothing short of mistrial or a new trial could have cured the violations.

Sequestration of most witnesses is mandatory when requested, *see* Fed. R. Evid. 615, but the district court is granted wide latitude in implementing sequestration orders, and the standard of review is abuse of discretion. *United States v. Vallie*, 284 F.3d 917, 921 (8th Cir. 2002); *United States v. Kindle*, 925 F.2d 272, 276 (8th Cir. 1991). Courts distinguish between a judge's failure to comply with a Rule 615 request and a party's violation of a Rule 615 order as in this case, with action on the latter committed to the sound discretion of the trial court. *See United States v. Ell*, 718 F.2d 291, 293 (9th Cir. 1983). The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty. *Vallie*, 284 F.3d at 921 (citing *Geders v. United States*, 425 U.S. 80, 87 (1976)).

Collins's first allegation involves Hald and Rydberg's confinement in the same holding cell during the trial. He cites *United States v. Greschner*, 802 F.2d 373 (10th Cir. 1986), for the proposition that the sequestration order "requires not only that prospective witnesses be excluded from the courtroom, but also that they be prohibited from discussing the case with other witnesses." However, *Greschner* did not create a blanket prohibition against allowing witnesses to discuss the case both before and after they testify as Collins asserts. Instead, the court in *Greschner* determined that Rule 615 and the trial court's sequestration order required only that witnesses be excluded from the courtroom and that witnesses be prevented from

discussing testimony "they have given and events in the courtroom with other witnesses who are to testify." *Id*. at 376. *Greschner* does not address the situation here involving two potential witnesses who possibly discussed the case *before* testifying or being present in the courtroom. As such, this is not a violation of Rule 615, which serves to "prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty." *Vallie*, 284 F.3d at 921; *Geders,* 425 U.S. at 87. Neither Hald nor Rydberg could tell the other about the nature of his testimony because neither had testified prior to the time they were in the holding cell.

Collins's second claim turns on Officer Jones's pre-testimony presence in the courtroom when Chance testified. Because Collins did not immediately object to the officer's presence, the issue may only be reviewed for plain error. However, even under plain-error review, the district court was not required to order a mistrial upon Collins's late mistrial motion. Instead, the trial court enjoys wide latitude to fashion the appropriate remedy for a violation, including a warning by the court prohibiting such contact, exclusion of testimony of the violating witness, or awarding a mistrial. We review that decision for an abuse of discretion. *Vallie*, 284 F.3d at 921; *Kindle,* 925 F.2d at 276. Here, the government notes that the district court admonished the prosecution about the violation. Furthermore, although the officer's presence violated the sequestration order, no prejudice occurred. Chance and Officer Jones offered testimony on two completely different issues that did not overlap and did not involve any of the same facts involving Collins. As such, the district court did not err in denying Collins's mistrial or new trial motions.

### E. *Factual Impossibility*

Collins next argues that he had "at least a partial factual impossibility defense" that the jury "disregarded" despite being specifically instructed that Collins was incarcerated during various periods within the time-frame in the indictment. Collins argues that when he was detained during these various dates, it was impossible for him to commit the crime of conspiracy. He also argues that although Matejka testified

that the two of them completed at least thirty-five drug deals between July and October 2000, these deals could have only taken place during July and August because Collins returned to custody in September of 2000. Collins offers no legal argument to support his claim.

Factual impossibility refers to those situations in which a circumstance or condition, unknown to the defendant, renders physically impossible the consummation of his intended criminal conduct. The oft-cited example is of the would-be thief who attempts to pick an empty pocket. *See United States v. Frazier*, 560 F.2d 884, 888 (8th Cir. 1977) (internal citations omitted); *United States v. Darnell*, 545 F.2d 595, 597 (8th Cir. 1976). Here, however, the facts indicate that the commission of the charged crime was not "factually impossible." Collins had sufficient time over the period charged in the indictment to sell the quantity of drugs he sold, and the indictment's inclusion of months in which Collins was in prison does not defeat the inclusion of months in which he was not in prison.

### F. *Daubert Inquiry for Fingerprint Evidence*

Collins next argues that the district court erred in failing to conduct a *Daubert*[5] analysis on fingerprint evidence used to enhance his sentence. The court admitted fingerprint evidence to identify Collins as the same person convicted of prior offenses. Collins challenged whether the fingerprints from his previous custody dates bore enough "indicia" of identity with Collins's fingerprints to support a conclusion that Collins committed the prior crimes. Collins argues that the fingerprint analysis did not meet *Daubert's* requirements for admission and use at sentencing to trigger the mandatory life sentence. Collins asserts that this was not harmless error, and his failure to challenge the admission of this evidence below does not prevent this court from declaring it as plain error.

---

[5] *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

We will apply a plain-error analysis because Collins failed to object to the admission of the fingerprint expert's testimony at trial. "Without an objection and a proper request for relief, the matter is waived and will receive no consideration on appeal absent plain error." *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407 (8th Cir. 1994) (quoting *Owen v. Patton*, 925 F.2d 1111, 1115 (8th Cir. 1991)). Under plain-error review, relief is not warranted unless the defendant demonstrates an error that is plain and that affects the defendant's substantial rights. *Jones v. United States*, 527 U.S. 373, 389 (1999); *United States v. Olano*, 507 U.S. 725, 732 (1993). The court then has discretion to correct a forfeited error if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, 507 U.S. at 732 (internal quotations and alterations omitted).

There is no plain error here. Fingerprint evidence and analysis is generally accepted. *See, e.g.*, *United States v. Havvard*, 260 F.3d 597, 600 (7th Cir. 2001).[6] We accepted the admissibility and reliability of fingerprint evidence in *United States v. Hernandez*, 299 F.3d 984, 991 (8th Cir. 2002), thus eliminating a challenge on the admissibility of such evidence on plain-error review. While such evidence may not always satisfy a *Daubert* challenge due to deficiencies in testing procedures, for example, there is no inherent fallacy in such evidence to make it inadmissible on plain-error review.

---

[6] The Seventh Circuit stated in *Havvard*, 260 F.3d at 600 (internal citations omitted):

> The issue of the reliability of fingerprint evidence after *Daubert* appears to be one of first impression in this circuit, and few other courts have addressed this question. Those discussing the issue have not excluded fingerprint evidence; instead, they have declined to conduct a pretrial *Daubert* hearing on the admissibility of fingerprint evidence, or have issued brief opinions asserting that the reliability of fingerprint comparisons cannot be questioned.

## G. *Denial of Motion for Downward Departure*

In his final point on appeal, Collins argues that the district court erred in denying his motion for downward departure under United States Sentencing Guidelines § 5K2.0 and § 4A1.3. Collins asserts that the district court mistakenly believed that it did not have the power to depart due to the application of the career offender statute and 21 U.S.C. § 841 (1999), and that the district court indicated that Collins's criminal history was "overstated." Collins addresses various prior offenses used to calculate his criminal history and argues that these should have only placed him in Criminal History Category V instead of Category VI.

Because the government did not file a motion for a downward departure from the statutory mandatory minimum sentence, the district court properly determined that it had no authority to depart. *See* 18 U.S.C. § 3553(e) (2000); *United States v. Johnson*, 988 F.2d 859, 860 (8th Cir. 1993); *United States v. Hawley*, 984 F.2d 252, 254 (8th Cir. 1993). The law is firmly established that a district court lacks authority to sentence below the statutory minimum if the pertinent provisions in 21 U.S.C. § 841(b) apply and the government has lawfully declined to move for a downward departure under 18 U.S.C. § 3553(e). *See United States v. Rodriguez-Morales*, 958 F.2d 1441, 1442–47 (8th Cir. 1992).

In this case, whether the mandatory life sentence under § 841(b)(1)(A)(viii) applies depends on whether 500 or more grams of methamphetamine were involved in Collins's offense. *See* 21 U.S.C. § 841(b). The jury convicted Collins of conspiring to distribute and possess with intent to distribute 500 or more grams of methamphetamine, a fact the sentencing court was permitted to adopt because the same court presided over the trial in the case. *See Wiggins*, 104 F.3d at 178 (sentencing court that sat as trial court is not required to hold an evidentiary hearing to resolve factual objections, and may instead base its findings of fact on the trial record). And, finally, because Collins was previously convicted of at least two other

drug felonies, § 841(b)(1)(A) makes a life sentence mandatory. Collins's argument that the district court erred when it believed it could not depart from the Guidelines is unavailing–the district court could not depart from the mandatory life sentence required under §841(b) unless the government made a motion otherwise.

We affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.