SHEPHERD, Circuit Judge.
A jury found Mare Robert Engelmann guilty of conspiracy to commit bank and wire fraud under 18 U.S.C. § 371, bank fraud under 18 U.S.C. §§ 2 and 1344, and wire fraud under 18 U-S.C. §§ 2 and 1343. Engelmann moved for a new trial on the grounds that (1) the district court failed to properly instruct the jury on his “good faith” defense-and (2) a conversation between two government witnesses during trial, in contravention of a sequestration order, violated his rights to a fair trial and to effective assistance of counsel. He also requested an evidentiary hearing on. the motion. The district court denied Engelmann’s motion without a hearing, sentenced him to 36 months imprisonment, and ordered him to pay three different financial institutions a total of $392,937.73 in restitution. Engelmann appeals the district court’s denial of his motion for a new trial, its denial of a hearing on the motion, its application of a sentencing enhancement based on the amount of loss, and its restitution awards.
In this opinion, we only address one of Engelmann’s points on appeal. Specifically, we vacate the district court’s denial of Engelmann’s motion for a new trial with respect to the alleged sequestration violation. We remand for the district court to conduct an evidentiary hearing on the limited issue of whether the government witnesses’ conversation warranted a new trial, to make supplemental findings of fact, and to reconsider Engelmann’s motion for a new trial in light of any evidence presented at this hearing. We retain jurisdiction to address all of Engelmann’s points on appeal after these further district court proceedings.
I.
Engelmann was a real estate attorney and represented a seller in nine different transactions that form the basis for his convictions. In each of these transactions, the buyer and seller entered into a “dual price” purchasing agreement whereby they provided lenders with inflated sales prices to secure higher loan amounts. The actual sales prices were lower than the amounts provided to the lenders, and the buyers pocketed the difference. All nine mortgages went into first payment default, and the properties were sold at foreclosure.
Engelmann’s defense at trial was that he did not have the requisite intent to defraud because he thought the lenders knew of the dual pricing scheme. During trial, a sequestration order prevented witnesses from being in the courtroom while other witnesses were testifying. Two FBI Special Agents, Jeff Huber and Jim McMillan (collectively “the Agents”), testified at trial that Engelmann told them he knew the lenders were unaware of the dual pricing arrangements. Engelmann, however, testified the Agents merely asked him whether the lenders would be victims of fraud if the lenders did not know of the dual pricing structure, and Engelmann responded that they would be victims under those facts. In closing argument, the prosecutor characterized the Agents’ version of Engelmann’s statement as “the most important evidence that has been presented” and “the most powerful evidence about the defendant’s guilt in this case.” The prosecutor argued Agent McMillan’s testimony regarding the statement was especially *876 credible since Agent McMillan was not in the courtroom while Agent Huber testified and thus “didn’t have the benefit of hearing Special Agent Huber’s testimony” before giving his own.
After the jury returned its guilty verdict, a man identifying himself as Richard McNamara called the district court judge’s chambers. According to the district court’s summary of this phone call, McNamara
informed the Court that he had attended the Engelmann trial and wanted to advise the Court of what he perceived as an “injustice” that had occurred during trial. Mr. McNamara reported that, during a court recess after SA Huber had testified, Mr. McNamara observed SA Huber talking to SA McMillan, who had not been in the courtroom during SA Huber’s testimony. According to Mr. McNamara, the two agents were discussing SA Huber’s testimony regarding the procedure and techniques the agents had used during the case investigation. Mr. McNamara also reported that he saw SA Huber look at the notes he had referred to during his testimony. Mr. McNamara said he felt this observation was significant because SA McMillan later gave testimony consistent with SA Huber’s testimony regarding the agents’ procedure and techniques in their investigation and as to what [Engelmann] had told them during the interview. Mr. McNamara further expressed that it was his recollection that the Government argued in closing that SA Huber and SA McMillan had testified independently and that they had never spoken to one another about their testimonies.
United States v. Engelmann, 827 F.Supp.2d 985, 988 (S.D.Iowa 2011) (footnote omitted). The district court wrote a letter to both parties informing them of the communication.
Engelmann moved for a new trial on the basis that the conversation deprived him of his rights to a fair trial and to effective assistance of counsel. More specifically, Engelmann argued that since the conversation did not come to light until after the jury’s verdict, he did not have the opportunity to cross-examine the Agents regarding the alleged communication and that the prosecutor made false statements to the jury in closing arguments. Engelmann also requested an evidentiary hearing on the motion.
The district court denied Engelmann’s motion for a new trial without making any reference to his request for an evidentiary hearing. First, the court held the record did not contain sufficient evidence of McNamara’s observations since McNamara neither submitted a sworn affidavit nor was an officer of the court under a sworn duty to the court. Id. at 991. Second, the court said that even if everything McNamara said were true, Engelmann still would not be entitled to a new trial because the Agents’ conduct did not violate the sequestration order. Id. at 991-92. The court reasoned the sequestration order did not forbid Agent Huber from being present in the courtroom during Agent McMillan’s testimony because Agent Huber was the government’s designated case agent at trial. Id. at 992. Furthermore, the “sequestration order merely excluded witnesses from the courtroom; it did not prohibit attorneys or SA Huber from meeting with a witness during the trial.” Id. Third, the court held that even if the conversation did violate the sequestration order, Engelmann did not show prejudice since the conversation concerned only the procedures and techniques of the investigation rather than the substance of Engel *877 mann’s confession, and since there was no evidence of collusion. Id.
II.
“Sequestration of most witnesses is mandatory when requested, but the district court is granted wide latitude in implementing sequestration orders, and the standard of review is abuse of discretion.” United States v. Collins, 340 F.3d 672, 680 (8th Cir.2003) (internal citation omitted). Federal Rule of Evidence 615 provides, in relevant part, that “[a]t a party’s request, the court must order witnesses excluded so that they cannot hear other witnesses’ testimony.” Fed.R.Evid. 615. However, Rule 615 explicitly “does not authorize excluding ... an officer or employee of a party that is not a natural person, after being designated as the party’s representative by its attorney.” Id. A person designated as a party’s representative can be present in the courtroom during witness testimony, and “[t]he decision whether to allow the government’s agent to testify even though the agent sits at the counsel table throughout the trial is left to the trial court’s discretion.” United States v. Sykes, 977 F.2d 1242, 1245 (8th Cir.1992).
As a preliminary matter, Agent Huber was the government’s designated representative in Engelmann’s case, while Agent McMillan was not. As such, the parties agree that Agent Huber’s presence in the courtroom during Agent McMillan’s testimony did not violate the sequestration order. Nor does either party argue the district court erred in allowing Agent Huber to testify. Rather, the only dispute concerns whether the Agents’ alleged out-of-court conversation after Agent Huber’s testimony but before Agent McMillan’s testimony, which allegedly concerned the Agents’ investigation of Engelmann and Agent Huber’s testimony regarding the same, violated the sequestration order.
Unless a district court specifies otherwise in a particular sequestration order, sequestration orders under Rule 615 do not forbid all contact with all trial witnesses at all times. See, e.g., United States v. Stewart, 878 F.2d 256, 259 (8th Cir.1989) (holding district court did not err in issuing sequestration order explicitly permitting government agents to communicate with witnesses). “The purpose of sequestration is to prevent witnesses from tailoring their testimony to that of prior witnesses and to aid in detection of dishonesty.” Collins, 340 F.3d at 681. Applying this principle, we have held that placing two trial witnesses in the same holding cell before either one had testified did not violate Rule 615. Id. We also have upheld a district court’s determination, after an evidentiary hearing, that a non-testifying police officer did not violate a sequestration order when he “took notes throughout the trial and relayed this information to government witnesses waiting to testify.” United States v. Smith, 578 F.2d 1227, 1235 (8th Cir.1978).
Applying this precedent, we hold that the district court abused its discretion in denying Engelmann’s motion for a new trial without first affording Engelmann an evidentiary hearing concerning the alleged conversation. According to the district court’s summary of McNamara’s phone call, McNamara accused Agent McMillan of speaking to Agent Huber during a court recess about Agent Huber’s earlier testimony. Agent McMillan had not yet testified. Thus, this is not a situation like Collins, which involved pre-testimony contact between witnesses, or like Smith, which involved contact between witnesses and a trial observer. Nor, as the dissent suggests, does this case merely involve allegations that a government’s designated representative met with a government witness to prepare for trial. Infra at 881-82. *878 Rather, these are specific allegations that Agent Huber directly disclosed details of his earlier testimony to Agent McMillan before Agent McMillan testified on the very same subject. We implicitly have recognized that sequestration violations are not limited to situations where a witness is present in the courtroom while another witness is testifying. See, e.g., United States v. Vallie, 284 F.3d 917, 921 (8th Cir.2002) (analyzing whether contact between trial observers and sequestered witnesses violated sequestration order); United States v. Kindle, 925 F.2d 272, 276 (8th Cir.1991) (analyzing whether contact between DEA case agents and sequestered witnesses violated sequestration order). Since sequestration orders are meant “to prevent witnesses from tailoring their testimony to that of prior witnesses,” Collins, 340 F.3d at 681, it would be illogical to hold that Agent McMillan, excluded from the courtroom pursuant to a sequestration order, could wait outside the courtroom doors and then discuss with Agent Huber the testimony which Agent Huber had just given.[1]
A district court may properly deny relief related to sequestration violations when the violations do not prejudice a defendant. See, e.g., id. (holding district court did not err in denying motion for mistrial based on sequestration violation when witnesses “offered testimony on two completely different issues that did not overlap and did not involve any of the same facts”); Vallie, 284 F.3d at 921 (holding district court did not err in allowing trial observers to communicate with sequestered witnesses when there was “no evidence that any conversations between trial observers and sequestered witnesses resulted in tailored testimony or otherwise prejudiced” the defendant). Here, however, the prosecutor characterized the Agents’ testimony as “the most important evidence that has been presented” and “the most powerful evidence about the defendant’s guilt in this case.” Under the facts of this case, the district court abused its discretion in denying Engelmann’s requested evidentiary hearing, concluding, in the absence of any factual findings regarding the alleged conversation, that the conversation did not violate the sequestration order or prejudice Engelmann.
In so holding, we do not express any opinion on the merits of Engelmann’s prejudice argument. The evidentiary hearing might reveal that the Agents’ conversation did not concern their trial testimony, that the conversation never took place at all, or that Engelmann was not otherwise prejudiced by the conversation. However, in the absence of an evidentiary hearing under the specific facts of this case, the district court did not have a principled way to determine whether the alleged conversation violated the sequestration order or whether any violation prejudiced Engelmann. Remand is necessary to further develop these issues.
*879 III.
Accordingly, we vacate the district court’s denial of Engelmann’s motion for a new trial on the limited issue of the alleged sequestration violation. We remand for the district court to hold an evidentiary hearing concerning the Agents’ alleged conversation, to make supplemental findings of fact, and to reconsider Engelmann’s motion for a new trial in light of any evidence presented at that hearing. We retain jurisdiction over this appeal pending the district court proceedings. See United States v. Khabeer, 410 F.3d 477, 479 (8th Cir.2005) (“[W]e remand the case to the district court for the limited purpose of making supplemental findings of fact necessary to the resolution of the ... claims, while retaining jurisdiction.”).

. The dissent cites United States v. Rhynes, 218 F.3d 310, 316 (4th Cir.2000) and United States v. Sepulveda, 15 F.3d 1161, 1176 (1st Cir.1993) for the proposition that "[o]ther circuits similarly have read Rule 615 as a mere limitation on witnesses' presence in the courtroom, absent a broader sequestration order.” Infra at 880 n.4. However, neither Rhynes nor Sepulveda involved specific allegations of one witness directly disclosing details of prior testimony to a second witness before the second witness testified. See Rhynes, 218 F.3d at 313-16 (holding that Rule 615 did not prevent defendant's attorney from discussing earlier government witness’s testimony with later defense witness before defense witness testified); Sepulveda, 15 F.3d at 1175-77 (holding that placing several witnesses in same holding cell during trial was not "automatic violation of a standard sequestration order”). Unlike the situations in Rhynes and Sepulveda, the allegations in Engelmann’s case effectively place Agent McMillan in the courtroom during Agent Huber’s testimony.